Leila Christoffel et al., Appellants *v.* Shaler Area School District et al., Appellees.

Argued May 8, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Dina G. McIntyre, McIntyre & McIntyre,* with her, *Ronald H. Heck,* for appellants.

*Thomas M. Rutter, Jr., Goehring, Rutter & Boehn,* for appellees, individually.

*James D. Zimmer & Dice,* for appellee, Shaler Area School District.

OPINION BY JUDGE ROGERS, June 11, 1981:

Parents of school-age children in the Shaler Area School District sought injunctive relief in the Court of Common Pleas of Allegheny County in the form of an order setting aside and declaring invalid the 1980-1981 school budget because it makes no provision for the retention of five principal's aides then employed in the district schools. A preliminary objection in the nature of a demurrer[1] was interposed by the district and sustained by the Court of Common Pleas of Allegheny County.

The factual allegations of the complaint are that the district was, some eight years earlier, experiencing serious difficulty in maintaining an atmosphere conducive to effective teaching. These difficulties included the sale and use of illicit drugs on school property by students and trespassing outsiders, extortion-

---

[1] Other issues were also raised as preliminary objections but we need not address these as we decide that the complaint fails to allege any basis for equitable relief. *See Landerman v. Churchill Area School District,* 414 Pa. 530, 533, 200 A.2d 867, 869 (1964).

ate threats upon younger and smaller students, and incidents of arson, vandalism and assault. In response to these threats to the well-being of its charges, the school board in 1973 hired five principal's aides to act as nonuniformed security personnel and to assist with student discipline. Two of these individuals were, as of the 1979-1980 school year, stationed at the Senior High School, one at the Junior High School, and two at the Intermediate School. It was further alleged that the principal's aides were responsible for a marked improvement of conditions in the schools, that the incidents just described have ceased or greatly decreased in number, and that the principal's aides "constituted a reasonable and effective means of controlling and deterring criminal and unlawful conduct in the secondary schools of the School District." On May 1, 1980, the board adopted a proposed budget which did not include funds for the retention of the principal's aides. Thereafter, parents had petitioned the board to reconsider its decision and, on June 12, 1980, a hearing was conducted by the board at which time parents and one of the aides stated their opposition to the proposed discontinuance of the positions. Another meeting was held on June 25, 1980, where the board received more comments on this issue, including a statement by an officer of the Shaler Township Police Department that the services provided by the principal's aides were still needed. Finally, it was alleged that by a vote of five to four, the board adopted a resolution calling for the elimination of the principal's aides' positions.

The court below determined that these allegations did not state a cause for the relief requested. An injunction will issue only when the rights of the plaintiff are clear, there is an urgent necessity to avoid injury which cannot be compensated for by damages, and greater injury will be done by refusing it than by

granting it. *Berman v. Philadelphia,* 425 Pa. 13, 228 A.2d 189 (1967). Moreover, the relief requested is, in effect, mandatory since it is intended to require the board to rehire five employees and it is well established that such mandatory relief should be sparingly granted. *McMullan v. Wohlgemuth,* 444 Pa. 563, 281 A.2d 836 (1971). In addition, plaintiffs seeking to upset the decisions of elected school officials through the invocation of equitable jurisdiction bear a heavy burden of pleading and proof.

> Only in those instances wherein arbitrariness, caprice, and wrongdoing characterize a board's act will a court interfere. Arbitrariness and caprice must not be confused with honest differences of opinion and judgment.

*Ulanoski v. Shaeffer,* 53 Pa. Commonwealth Ct. 279, 281, 417 A.2d 846, 847 (1980).

In *Zebra v. School District of the City of Pittsburgh,* 449 Pa. 432, 296 A.2d 748 (1972), parents alleged that their children had been the victims of violent incidents strikingly similar to those allegedly occurring in the Shaler Area District in 1973. The Supreme Court reversed the grant of a mandatory injunction which required school authorities to provide plaintiffs' children with alternative safe facilities. The Court stated:

> Courts are . . . restrained, when dealing with matters of school policy, by the long-established and salutary rule that the courts should not function as super school boards. We will not interfere with the discretionary exercise of a school board's power unless the action was based on 'a misconception of law, ignorance through lack of inquiry into the facts necessary to form an intelligent judgment, or the result of arbitrary will or caprice.' . . . 'It is only when the board transcends the limits of its legal

discretion that it is amenable to the injunctive processes of a court of equity.' . . . The burden of showing such an abuse is a heavy one and rests with the party seeking the injunction. (Citations omitted.)

*Id.* at 437, 296 A.2d at 750-751.

In *Landerman v. Churchill Area School District,* 414 Pa. 530, 200 A.2d 867 (1964) parents sought an injunction to set aside a decision of the school authorities to discontinue bus service to students residing near their assigned school. The defendant school directors filed preliminary objections in the nature of a demurrer which were sustained by the trial court. The Supreme Court, after noting that appended to the complaint was a report of a municipal engineer reciting the "dangers and hazards which [will] result from the reckless decision" to curtail bus service, affirmed the dismissal of the complaint. The Court reasoned:

In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. 'It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity.' . . . The burden of showing such a clear abuse of discretion is a heavy one. . . . Even assuming, as we must, that all well-pleaded allegations of fact (but not conclusions of law) in the complaint are admitted by defendants' preliminary objections, . . . plaintiffs have failed to allege facts sufficient to justify the intervention of equity into this controversy. A careful reading of the complaint as a whole discloses nothing more than that plaintiffs, with some support for their position, disagree with the judgment

and decision of the school board. (Citations omitted.)

*Id.* at 534, 200 A.2d at 869.

Here plaintiffs have not alleged any facts from which it could be inferred that the Board acted in violation of its statutory mandate, capriciously, or in bad faith. On the contrary the School Code nowhere expressly requires the employment of principal's aides and the averments indicate that the Board, properly motivated by budgetary concerns, acted deliberately and after inquiry into the facts.

Moreover, plaintiffs have failed to allege the certainty of immediate and irreparable harm necessary for injunctive relief. An alternative rationale for the Supreme Court's decision in *Zebra, supra,* was that the:

Injunction was improvidently granted because it was based entirely on incidents which had occurred almost a month prior to the hearing.

*Id.* at 439, 296 A.2d at 751.

Here, the allegations of conditions hazardous to the well-being of students consist entirely of a recitation of incidents which occurred over seven years ago. It is not explicitly alleged that these conditions will reoccur in the absence of the principal's aides and although it is implicit in the complaint that the plaintiffs believe that they will reoccur, there is no evidence in the record, including the opinion of the Shaler Township Police officer alluded to above, that would impel us to disturb the findings and conclusions of the chancellor.

Order affirmed.

## Order

And Now, this 11th day of June, 1981, the order of the Court of Common Pleas of Allegheny County is affirmed.