## Merrill Lynch, Pierce, Fenner & Smith v. Roodveldt

*Gregory S. Rubin,* for plaintiff.
*Jeffrey B. Albert,* for defendant.
*Andrew L. Braunfeld,* for defendant.

SUBERS, *J.*, July 7, 1983—This is an action in equity brought by plaintiff, Merrill Lynch, Pierce,

Fenner and Smith (Merrill Lynch) seeking a preliminary injunction restraining defendant, Stephany Roodveldt, from: (1) soliciting or accepting the business of any client of Merrill Lynch whom defendant served or whose name became known to her while in the employ of Merrill Lynch; (2) using or disclosing any confidential information, trade secrets and/or commercially sensitive materials contained in the records of Merrill Lynch; (3) using the good will of Merrill Lynch for her own benefit; for a period of one year from the date of the order of court.

A hearing was held before the undersigned sitting as Chancellor commencing on June 28th, 1983. From the pleadings and the testimony, the Chancellor makes the following

## FINDINGS OF FACT

1. Plaintiff and defendant entered into an agreement which has been designated in the record as P-1.

2. Defendant knew the provisions of P-1.

3. At least three months prior to leaving plaintiff, Merrill Lynch, Defendant, Roodveldt, was seeking a guarantee of payment of her legal fees by Prudential-Bache in the event that plaintiff, Merrill Lynch, brought an action against her.

4. Defendant was advised approximately three months prior to leaving Merrill Lynch of injunctive action which had been taken against other account executives who left Merrill Lynch and that Merrill Lynch intended to enforce the agreeement designated as P-1.

5. At least one month prior to leaving plaintiff and beginning at Prudential-Bache, defendant began contacting clients of Merrill Lynch, clients whose names became known to her and/or were served by her, all of which clients were in communi-

ties served by the Jenkintown Merrill Lynch Office. All of this was done without the permission or knowledge of Merrill Lynch.

6. Prior to leaving Merrill Lynch, defendant removed from Merrill Lynch's premises copies of lists of clients, copies of holding cards and names, addresses and telephone numbers of clients.

7. Defendant gave notice of termination on June 21, 1983 to Merrill Lynch and immediately left their employ and reported to Prudential-Bache where announcement cards were immediately sent to Merrill Lynch clients. This was the first notice of termination which Merrill Lynch received.

8. While still in the employ of Merrill Lynch defendant, Roodveldt, obtained signed broker-to-broker forms from approximately 18 clients to transfer these accounts from Merrill Lynch to Prudential-Bache, and further, while still in the employ of Merrill Lynch and by her own admission, contacted at least 26 more clients whom she had served or were known to her at Merrill Lynch.

9. Customer list P-2, holding cards and other information are confidential records and are not accessible to competitors through any means other than transfer by an employee having access to same.

10. A temporary restraining order was entered by this court on June 23, 1983 and amended on June 24, 1983, which order reads as follows:

Upon entry of security of $50,000, defendant is enjoined and restrained until the hearing and thereafter until further order of this court from:

A. Soliciting any business from any clients of Merrill Lynch whom defendant served or whose names became known to defendant while in the employ of Merrill Lynch, including, without limita-

tion, all individuals and entities referenced on Exhibit "C" to plaintiff's complaint.

B. Using, disclosing or transmitting information contained in the records of Merrill Lynch including the names and addresses of its clients including Exhibit "C", using, disclosing or transmitting any confidential information, trade secrets and commercially sensitive materials unique to Merrill Lynch.

C. Using to her own benefit the Merrill Lynch name and logo.

That order was to remain in force and effect until this court specifically ordered otherwise and a hearing was set for Tuesday, June 28, 1983 at 9:30 a.m. Said hearing did begin on June 28, 1983 at 9:30 a.m.

## DISCUSSION

Prior to this court's issuance of the June 23, 1983 temporary restraining order, defendant moved to quash plaintiff's action in trespass based upon this court's lack of subject matter jurisdiction due to the arbitration clause contained in the Account Executive Trainee Agreement (Plaintiff's Exhibit no. 1) which provides as follows:

"I agree that any controversy between myself and Merrill Lynch arising out of my employment, or the termination of my employment, with Merrill Lynch for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the Constitution and Rules of the New York Stock Exchange, then in effect."

The agreement containing this arbitration clause was signed by both parties on July 20, 1978, and further provides that the validity, performance, and enforcement of the agreement shall be governed by the laws of the state of New York (Plaintiff's Exhibit no. 1, paragraph 6).

Relying upon New York case law, this court concluded that it possessed the requisite subject matter jurisdiction to entertain plaintiff's complaint seeking equitable relief.

"While parties may have agreed to arbitrate their underlying dispute, they should not, by virtue of that agreement, necessarily be precluded from obtaining preliminary injunctive relief (which is perhaps the only means of maintaining the status quo pending an opportunity to arbitrate their dispute upon the merits) especially where it can be clearly demonstrated that they will suffer irreparable injury unless the status quo is maintained": New England Petroleum Corp. v. Asiatic Petroleum Corp., 82 Misc. 2d 561, 565, 368 N.Y.S.2d 930, 934 (N.Y.Sup.Ct. 1975); E.F. Hutton and Co. v. Bokelmann, 56 Misc. 2d 910, 290 N.Y.S. 2d 415 (N.Y.Sup.Ct. 1968); Merrill Lynch v. Branson, No. 82-3136 (N.Y.Sup.Ct. June 24, 1982).

This court finds that preliminary injunctive relief is the only means available to Merrill Lynch to maintain the status quo pending an opportunity to arbitrate the dispute upon the merits. However, plaintiff must establish its right to such relief.

At the hearing on this matter, plaintiff proceeded on the theory that the confidential list of customers (Plaintiff's Exhibit No. 2) used by defendant while in the employ of Merrill Lynch constituted a "trade secret" which was entitled to special protection in the form of injunctive relief should defendant attempt to use the list outside the scope of her employment with Merrill Lynch.

The landmark case in Pennsylvania dealing with restrictive covenants not to compete and disclose trade secrets is Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957). The Morgan case holds that an employer's confidential

list of customers may constitute a trade secret which is property and entitled to special protection, independent of a non-disclosure contract, based upon the principles of agency law or the law of unfair trade practices. In subsequent applications of the Morgan doctrine, the Pennsylvania Supreme Court has held that when an employer seeks to enjoin a former employee from utilizing information acquired by the employee during the course of his employment, the employer has the burden of showing two things: (1) a legally protectable trade secret and (2) a legal basis, either a covenant or a confidential relationship, upon which to predicate relief: Spring Steels, Inc. v. Molly, 400 Pa. 354, 363, 162 A.2d 370, 374-375 (1960); quoting, Wexler v. Greenberg, 399 Pa. 569, 577, 160 A.2d 430, 434 (1959). In determining whether the confidential list of customers in question should be considered a trade secret, this court must consider the following six factors:

"(1) the extent to which the information is known outside of his (the employer's) business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others:" Bell Telephone Laboratories v. General Instrument Corp. 112 Montg. Co. L.R. 311, 315, (1983); quoting, Restatement of Torts (1939) Section 757, Comment b.

The initial determination for this court is whether Merrill Lynch identified and defined its alleged "trade secret" with sufficient particularity to satisfy

the above criteria. Lawrence W. Forlenza, the Manager and Vice-President of the Merrill Lynch Office in Jenkintown, Montgomery County, Pa., testified that only two people had access to the contents of the confidential list of clients in question. Defendant, Mrs. Roodveldt, as the account executive assigned to the various accounts was the only person other than Mr. Forlenza who had access to the list at Merrill Lynch. No one outside the Jenkintown Merrill Lynch Office had any knowledge regarding the contents of the list. The proceedings before this court demonstrated the measures taken to guard the secrecy of the information contained within the list. Counsel for plaintiff requested that the portion of the record containing the list be sealed to protect the contents from becoming public knowledge and this request was granted.* Regarding the value of the list, Mr. Forlenza testified that the names contained therein would generate approximately $300,000 worth of business to Merrill Lynch in 1983 and substantially more in future years. In an attempt to define the amount of effort and money expended by Merrill Lynch in developing the list, Mr. Forlenza provided the court with an estimate in the "tens of millions of dollars". This estimate was based upon the years of training given to defendant while in the account executive trainee program, the supervision provided by the office manager, the salary of defendant for approximately four and one-half years, plus the research and advertising expenditures of Merrill Lynch. Finally, Mr. Forlenza stated

---

*A separate hearing was held to determine whether the press should be barred from the courtroom proceedings which involved testimony pertaining to the contents of the list of clients. This court concluded at that hearing that the need to keep the clients' names confidential outweighed the public's right to know the contents of the list.

on the record that it would be "impossible" for defendant to properly acquire or duplicate the contents of the list independent of the Merrill Lynch facilities.

This court concluded that plaintiff provided sufficient detail to establish the six Restatement criteria thereby proving the existence of a legally protectable "trade secret". Having proved a protectable "trade secret", Plaintiff must next establish a legal basis, either a covenant or a confidential relationship, upon which to predicate equitable relief: Spring Steels, Inc. v. Molloy, supra; Wexler v. Greenberg, supra. Plaintiff maintains that both a legally enforceable contract and a confidential relationship exist between the parties in the instant case.

The July 20, 1978 account executive trainee agreement also contains the following terms and conditions:

"1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch who I served or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch, or any subsidiary there-

of, at which I was employed at any time for a period of one year from the date of termination of my employment. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated, I understand that I will be liable to Merrill Lynch for any damage caused thereby." (Plaintiff's Exhibit #1, paragraphs 1 and 2)

New York case law has held that the promise of an employee not to engage in competitive activities with his employer following the termination of employment in exchange for the employer's promise to provide the employee with valuable experience and training is sufficient consideration to validate a restrictive covenant: Carpenter and Hughes v. DeJoseph, 27 Misc. 2d 1003, 213 N.Y.S.2d 856, mod. on other grounds, 13 A.D.2d 611, 213 N.Y.S.2d 860, aff'd, 10 N.Y.2d 925, 179 N.E.2d 854, 244 N.Y.S.2d 9 (1961). In DeJoseph, defendant entered into a written contract with plaintiff in which defendant stipulated that he would not engage in the ophthalmic dispensing business within the City of Syracuse nor solicit the business of any of plaintiff's customers for a period of five years following the termination of his employment with plaintiff. The Supreme Court of Onondaga County held that there was valuable consideration for the restrictive covenant despite its conclusion that a portion of the covenant was against public policy. Defendant was thereafter restrained from soliciting plaintiff's customers for a five year period.

Based upon the DeJoseph rationale, this court concluded that the anti-competition agreement between Merrill Lynch and defendant constituted a legally enforceable contract supported by valuable consideration. Said contract provides plaintiff with a legal basis upon which to predicate equitable relief, thus, satisfying the second element of the test de-

vised by the Pennsylvania Supreme Court: Spring Steels, Inc. v. Malloy, supra; Wexler v. Greenberg, supra.

An alternative legal basis upon which to predicate relief is provided by the confidential relationship that existed between plaintiff and defendant as employer and employee. The New York courts have consistently applied the principle that an employee owes a *fiduciary duty* to his employer and is prohibited from acting in any manner inconsistent with the agency or trust relationship. The employee is bound, at all times, to exercise the utmost good faith and loyalty in the performance of his duties: Aga Aktiebolag v. ABA Optical Corp., 441 F.Supp. 747, 754 (E.D.N.Y. 1977); citing Duane Jones v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954) (Emphasis added). Furthermore, an employee is generally permitted to compete with his former employer as to matters for which he has been employed. However, the employee is not free to exploit the same trade if the opportunity was facilitated by acts of preparation and disloyalty during his employment, before resignation, and by the breach of his obligation to use his best efforts in the interest of his employer. By soliciting customers for a competitor, before the termination of his employment relationship with his current employer, an employee violates his fiduciary obligations owed to his employer: Aga Aktiebolag v. AGA Optical Corp., supra; Velo-Bind, Inc. v. Scheck, 485 F.Supp. 102, 109 (S.D.N.Y. 1979). See also, Certified Laboratories of Texas, Inc. v. Rubinson, 303 F.Supp. 1014, 1024 (E.D.Pa. 1969); citing, Morgan's Home Equipment Corp. v. Martucci, supra, 390 Pa. at 623-624, 136 A.2d at 842.

It is interesting to note that by soliciting the clients on the confidential list, defendant, in the in-

stant case, breached *both* the legally enforceable restrictive covenant and the fiduciary duty she owed to plaintiff, Merrill Lynch. Defendant argued that her conduct did not constitute solicitation as prohibited by paragraph two of the account executive trainee agreement. With this contention, we strongly disagree.

New York case law has defined the word "solicit" as follows:

"But apart from the foregoing, in the ordinary sense, the word 'solicit' means: to approach for something, to ask for the purpose of receiving; to endeavor to obtain by asking; to importune or implore for the purpose of obtaining; to awake or incite to action by acts or conduct intended to and calculated to incite the giving." People v. Framer, 208 Misc. 236, 139 N.Y.S.2d 331, 337 (Mag.Ct.N.Y. 1954).

Counsel for plaintiff, when reading from Webster's New Collegiate Dictionary, defined the term "solicit" in the following manner:

"To make petition, to entreat, to approach with a request or plea, to strongly urge."

Perhaps the most enligtening definition of the term was provided by defendant, herself, in the following exchange with plaintiff's counsel during cross-examination:

"Mr. Rubin: I asked you if you knew or had a common, everyday, ordinary usage meaning of the word 'solicit' prior to this lawsuit, and I believe your answer was yes, you did?

Mrs. Roodveldt: Okay.

Mr. Rubin: You had an understanding of that word?

Mrs. Roodveldt: Okay.

Mr. Rubin: I've asked you, had you intended to call Mr. Gilpin and solicit his business?

Mrs. Roodveldt: *If solicit means to service the gentleman and make it clear that I wanted to continue to do business with him, yes.*

Mr. Rubin: Now, when you planned to do that were you aware of the language in paragraph two of your contract?

Mrs. Roodveldt: Yes, I was." (Emphasis added).

Based upon the foregoing, it is clear to this court that defendant had an understanding of the ordinary meaning assigned to the word "solicit". It is equally clear that defendant deliberately violated the express and implied terms of paragraphs one and two of the contract between the parties. This conclusion is supported by (1) defendant's telephone campaign whereby she attempted to contact as many of the clients on the confidential list as possible prior to her resignation, with special emphasis upon the accounts generating the most revenue for Merrill Lynch; (2) defendant's personal appointments with several of the clients on the list through which she obtained approximately 18 signed broker-to-broker forms from the clients to transfer their accounts from Merrill Lynch to Prudential-Bache, while still in the employ of Merrill Lynch, and (3) defendant's mailing of a follow-up letter to the clients on the list on Prudential Bache stationery, after tendering her resignation, which provides in pertinent part:

"My activities in my new position will continue as an Account Executive and investment counselor to my clients, and *I look forward to continuing to service you in the future.*

*I will be contacting you shortly to facilitate the smooth transfer of your account into the Prudential-Bache system.* In the meantime, should you have any questions, please do not hesitate to contact

me . . . " (Plaintiff's Exhibit no. 10), (Emphasis added).

By unequivocally expressing her intent and desire to continue to "service" Merrill Lynch clients after resigning from the firm, defendant willfully solicited Merrill Lynch clients in violation of the employment contract. In addition, defendant's scheme violated her fiduciary obligation to use her best efforts in the interest of Merrill Lynch: AGA Aktiebolag v. ABA Optical Corp., supra.

Having established a legally protectable trade secret and a legal basis upon which to predicate equitable relief, namely, the existence of a valid contract *and* a confidential relationship, plaintiff has proven its right to preliminary injunctive relief: Spring Steels, Inc. v. Molloy, supra; Wexler v. Greenberg, supra; interpreting, Morgan's Home Equipment Corp. v. Martucci, supra.

The standard in Pennsylvania governing injunctive relief is that "the plaintiff must establish a clear right, not doubtful, nor uncertain, and the injury threatened must be of a permanent and irreparable character": Mc Donald v. Noga, 393 Pa. 309, 313, 141 A2d 842, 844 (1958); Williams v. Bridy, 391 Pa. 1, 136 A.2d 832 (1958). In addition, the party seeking injunctive relief must show that there is an urgent necessity to avoid injury which cannot adequately be compensated for by damages: Christoffel et al. v. Shaler Area School District et al., 60 Pa. Commw. 17, 19, 430 A.2d 726, 728 (1981); citing, Berman v. Philadelphia, 425 Pa. 13, 228 A.2d 189 (1967). Due to the classification of the confidential list of clients as a trade secret coupled with the existence of a valid contract and confidential relationship between the parties, plaintiff has established a clear legal right to injunctive relief. Next, plaintiff

must establish the requisite irreparable harm and inadequacy of monetary damages.

When analyzing the extent of the harm caused to Merrill Lynch by defendant's appropriation of the confidential client list, Lawrence W. Forlenza testified that it would be impossible to put a "price tag" on the injuries sustained by Merrill Lynch. Mr. Forlenza based his opinion upon the following factors: (1) loss of clients, (2) loss of referrals from departing clients, (3) the tarnishing of the Merrill Lynch image of dependability, stability and trust, (4) loss of client confidence, (5) loss of marketing ideas and investment strategies to a major competitor, and (6) loss of office stability and morale. Significantly, these same factors were weighed in a Texas Court of Civil Appeals case in which the court concluded:

"To demonstrate (irreparable) harm, a party must show a noncompensable injury, for which there can be no real legal measure of damages, or none that can be determined with a sufficient degree of certainty. *One cannot assign a dollar value to a company's loss of clientele, good will, office stability, commission schedules, marketing techniques,* and *investment strategies*": David v. Bache, Halsey Stuart, Shields, Inc. _____ Tex.Civ.App. ____, 630 S.W.2d 754, 757 (1982) Fed.Sec.L.Rep.(CCH) ¶98,640 (Emphasis added).

The facts of the David case are strikingly similar to those of the case at bar. Michael David worked for Bache in the capacity of a securities/commodities sales trainee and signed an employment contract containing a restrictive covenant. Mr. David left Bache to join the firm of Shearson American Express taking with him Bache's confidential customer lists. The Texas court held that the trial court did not abuse its discretion in granting a temporary in-

junction until arbitration proceedings were concluded: David v. Bache, Halsey, Stuart, Shields, Inc. supra. We are persuaded by the Texas court decision.

Merrill Lynch has clearly established its right to preliminary injunctive relief. The issue now becomes the scope of said relief. The role of this court is to provide plaintiff with the minimum equitable relief necessary to maintain the status quo of the parties until either the matter is arbitrated *or* one year elapses pursuant to the language of the restrictive covenant. We conclude that it is not necessary or proper for this court to enjoin Merrill Lynch customers whose names appear on plaintiff's Exhibit No. 2 from voluntarily leaving Merrill Lynch and continuing their relationship with defendant at Prudential-Bache or from selecting any other account executive/broker in the securities business. We base our decision, in large part, from the language of the permanent injunction issued by the Court of Common Pleas in Philadelphia County and reinstated by the Pennsylvania Supreme Court in Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 252 Pa. Super. 553, 382 A.2d 1226, rev'd, 482 Pa. 416, 393 A.2d 1175, cert. denied, 442 U.S. 907 (1979), which provides in pertinent part:

"2. Nothing in this Final Decree shall preclude those persons who, up to and including April 1, 1977, had active legal matters pending with and had been represented by the law firm of Adler, Barish, Daniels, Levin and Creskoff from *Voluntarily discharging* their present attorney and selecting any of the defendants, or an other attorney, to represent them."
Adler, Barish, Daniels, Levin and Creskoff v. Epstein, supra. (Emphasis added).

Accordingly, we shall direct that the injunction herein be so limited as to eliminate those customers voluntarily departing from Merrill Lynch from its restraint.

In order to insure that adequate funds exist to satisfy an arbitration award should plaintiff emerge from that proceeding victoriously, this court has adopted a modification of the remedy molded by the Pennsylvania Supreme Court in Morgan's Home Equipment Corp. v. Martucci, supra. When defining the scope of the injunction, the Morgan court concluded that the former employees were properly directed to render an accounting for all profits obtained from the disclosure of certain confidential customer information. We believe that it is necessary to preserve the status quo of the parties by requiring defendant to deposit in an escrow account all commissions and fees earned on future transactions with the clients who were wrongfully solicited in violation of the restrictive covenant. Accordingly, this court makes the following

## CONCLUSIONS OF LAW

1. Plaintitff, Merrill Lynch has standing to bring this action.

2. This court has jurisdiction.

3. Plaintiff, Merrill Lynch, and defendant, Roodveldt, entered into a valid, binding, and legal agreement called account executive trainee agreement which has been identified as P-1, at the time that defendant was hired in a sales capacity or as a trainee for a sales position and Merrill Lynch did pay the agreed salary, the cost of training and schooling and afforded defendant, Roodveldt, other opportunities for good and valuable consideration.

4. The list identified as P-2 qualifies as a trade secret.

5. Defendant, Roodveldt, willfully, flagrantly and with full knowledge that she was doing so, violated the terms and conditions of the account trainee agreement paragraphs 1 and 2.

6. Plaintiff, Merrill Lynch has and will continue to suffer irreparable harm to such a degree that it is mandatory on this court to not only continue the temporary restraining order but to also modify same and provide further injunctive relief.

7. The court has no power to enjoin the clients from voluntarily continuing to do business with defendant, Roodveldt, nor to enjoin defendant, Roodveldt, from accepting their business. This, however, is not to be confused with the court's power to enjoin defendant, Roodveldt, from soliciting business from those persons listed in Exhibit "C" of plaintiff's complaint.

The court issues the following order as the minimum equitable relief necessary to maintain the status quo of the parties until a full and complete hearing or until June 21, 1984, whichever shall come first.

## DECREE NISI

And now, this July 7, 1983, upon consideration of the verified complaint in equity, the motion of plaintiff and the hearing that has been held and having determined that:

1. Plaintiff will suffer irreparable harm and loss if defendant is permitted to convert the property of Merrill Lynch to her own personal use and benefit and solicit Merrill Lynch accounts, clients and customers for her new employer, Prudential-Bache Securities.

2. Plaintiff has no adequate remedy at law; and

3. Greater injury will be inflicted upon plaintiff by denial of temporary injunctive relief and interim

relief until the full hearing than will be inflicted upon defendant by granting of such relief.

It is hereby ordered and decreed that:

1. The same security of $50,000 will continue.

2. Defendant is enjoined and restrained from:

A. Soliciting any business from any client of Merrill Lynch whom defendant served or whose name became known to defendant while in the employ of Merrill Lynch, including, without limitation, all individuals and entities referenced on Exhibit "C" to plaintiff's complaint which is also P-2 of the evidence admitted in this court and during this hearing.

B. Using, disclosing or transmitting information contained in the records of Merrill Lynch, including names and addresses of its clients included in Exhibit "C" of plaintiff's complaint, and also in P-2 which was an exhibit admitted into evidence, and in using, disclosing or transmitting any confidential information, trade secrets and commercially sensitive material unique to Merrill Lynch.

C. Using to her own benefit the Merrill Lynch name and logo.

3. Defendant further shall deposit in an escrow account jointly in her name and in the name of plaintiff, Merrill Lynch, a sum of money equal to all commissions and fees earned on any transaction between herself and those clients listed by defendant, Roodveldt, in her testimony as having signed broker-to-broker forms or as having been personally contacted by defendant, Roodveldt, prior to defendant's leaving plaintiff, Merrill Lynch, and becoming employed by Prudential-Bache. The interest earned on this account will follow the final result and final determination of the hearing. In other words, if some money is due Merrill Lynch or a sum

is due defendant, the interest will proportionately follow.

4. During the period of one year from June 21, 1983, or until June 21, 1984, or until further order of this court upon final determination of the matter, whichever shall come first, defendant shall deposit in this account all commissions and fees earned on any future transactions with these same parties, namely those who signed broker-to-broker agreements to transfer the accounts to Prudential-Bache prior to defendant leaving Merrill Lynch, and also those that were contacted by defendant prior to her leaving Merrill Lynch. Commissions and fees means the total commission and fee earned on any transaction and not just defendant's percentage of same, it being the court's intention that defendant will not benefit financially from her flagrant and willful acts until a final determination takes place prior to June 21, 1984.

To clarify, the deposit will be made for any transactions for a one year period; however, the case may not be decided finally within that one year period, at which point the joint account continues until final determination although no further deposits are necessary after the one year.

5. In addition, within 15 days from the date of this order which is July 7, 1983, the parties will advise the court of the escrow account and agent and the arrangements made therefor.

6. This order shall remain in full force and effect until such time as this court specifically orders otherwise, except that the orders contained in paragraphs 1 and 2 which are the orders against soliciting, using, disclosing, etc. and which will terminate

on June 21, 1984, by the very nature of the terms unless a further order of the court comes first.

So ordered this July 7, 1983.