Berman, Appellants, *v.* Philadelphia.

Argued January 16, 1967. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frank Bielitsky,* with him *Meranze, Katz, Spear & Bielitsky,* for appellants.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellees.

OPINION BY MR. JUSTICE ROBERTS, March 14, 1967:

On October 18, 1966 the Philadelphia Department of Licenses and Inspections issued a use and zoning permit to appellants whereby they were granted permission to use a trailer on a specified lot as a bail and bondsman's office. In reliance upon this permit appellants-licensees entered into a lease agreement on October 19, 1966 and purchased a trailer for $1,400. By letter dated November 3, 1966, the Department revoked the permit on the ground that a trailer was not an enclosed building as required by the zoning code, and, on the following day, advised appellants they were operating in violation of the code.

On November 14, 1966, appellants filed a complaint in equity in the Court of Common Pleas of Philadelphia County wherein they averred that the executive department of the City of Philadelphia was about to

forcibly evict them from their location. Appellants requested the issuance of an immediate order restraining the city authorities from taking such action; the court refused to issue an ex parte order in advance of a hearing. What happened next is not disputed: "[S]hortly after 5:00 P.M. [on the afternoon of the 14th], City employees acting at the direction of the Philadelphia Police, and specifically under orders from Deputy Police Commissioner Rizzo, severed and cut the telephone and electric wires leading into the trailer. Thereafter, the doors to the trailer were locked and a police officer was stationed in front of the trailer with instructions to refuse access and entry by the Appellants."[1] On November 15, the court issued a rule to show cause on the appellees as to why they should not be restrained from dispossessing appellants in this manner. The rule to show cause was returnable on November 17, but a hearing was not held until November 21. On November 23 the court entered an order refusing a preliminary injunction and discharging the rule. In its opinion, filed about three weeks later, the court explicitly expressed its disapproval of the manner in which the city authorities accomplished their objective. Finding itself faced with a *fait accompli,* however, the court concluded that, inasmuch as appellants had introduced no evidence showing that they could not conduct their business elsewhere in the same vicinity or that they could not recover damages through alternative legal proceedings, it did not have the power to restore the status quo ante pending a final orderly determination of appellants' rights.[2]

---

[1] From appellants' petition to this Court requesting a preliminary injunction pending disposition of appeal. See infra. The averment was admitted by the City in its answer.

[2] The Philadelphia Zoning Ordinance, §14-1705, provides that an appeal to the zoning board of adjustment, which appellants filed on November 14, 1966, operates as a stay of the proceedings

16

Following the denial of the request for a preliminary injunction in the court below, appellants filed in this Court a petition for an order directing the issuance of a preliminary injunction pending disposition of the appeal. Four members of this Court were unwilling to issue such an order without the benefits of briefs and oral argument; accordingly the petition was denied on December 21, 1966.[3] We did, however, grant appellants' petition for advancement. Their appeal from the denial of the preliminary injunction[4] was argued at our January session and is presently before us for adjudication.

On this appeal it is important to emphasize that, unlike the dissenting opinion, we are in no way concerned about the merits of the underlying zoning controversy. Nor are we concerned about whether the appellants may, under applicable federal or state law, have an additional cause of action against the parties responsible for their eviction. The sole question for our consideration is whether the court below abused its discretion in declining to issue the preliminary injunction. We conclude that the failure of the court below to insist that the police resort to the available legal machinery rather than forcibly evicting appellants, thereby insuring the dignity of the legal process, did amount to an abuse of discretion.

---

unless "the Department [whose order is being appealed] certifies to the Zoning Board, after notice of appeal, that for reasons stated in said certificate a stay would, in its opinion, cause imminent peril to the public health, safety or general welfare." No such certification was made in the instant case. Moreover, even where this exception is utilized by the Department, the zoning board or a court of record may issue a restraining order thereby maintaining the status quo.

[3] Mr. Justice ROBERTS filed a dissenting opinion (unreported) in which Mr. Chief Justice BELL and Mr. Justice MUSMANNO joined.

[4] Act of June 12, 1879, P. L. 177, §1, 12 P.S. §1102.

We recognize that on an appeal from the refusal to grant a preliminary injunction, this Court will not interfere with the discretion of the hearing judge as long as there are any apparently reasonable grounds for its action. *Rubin v. Bailey,* 398 Pa. 271, 157 A. 2d 882 (1960). Furthermore an injunction will only issue when the rights of the plaintiff are clear, there is an urgent necessity to avoid injury which cannot be compensated for by damages, and greater injury will be done by refusing it than by granting it. *Schwab v. Pottstown Borough,* 407 Pa. 531, 533, 180 A. 2d 921, 922 (1962).

It cannot be gainsaid that appellants had a right to insist that the police not seize their property without due process of law. With respect to the other requirements mentioned in *Schwab,* surely, as Mr. Justice BRANDEIS recognized, basic respect for government is eroded when some of its officers arbitrarily ignore established procedures of law and rely upon the force of their power: "At the foundation of our civil liberty lies the principle which denies to government officials an exceptional position before the law and which subjects them to the same rules of conduct that are commands to the citizen. And in the development of our liberty insistence upon procedural regularity has been a large factor. Respect for law will not be advanced by resort, in its enforcement, to means which shock the common man's sense of decency and fair play."[5]

Thus, the interest to be protected here, which can never be compensated for in damages, extends beyond the instant appellants to the community at large. Cf.

---

[5] *Burdeau v. McDowell,* 256 U.S. 465, 477, 41 S. Ct. 574, 576 (1921) (dissenting opinion). See also *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961); *Miller v. United States,* 357 U.S. 301, 313, 78 S. Ct. 1190, 1197 (1958); *Olmstead v. United States,* 277 U.S. 438, 469, 471, 48 S. Ct. 564, 575, 570 (1928) (dissenting opinions of HOLMES, J. and BRANDEIS, J.).

*Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961). Indeed under our law one accused of even the most serious crime is granted far more protection as a matter of constitutional right than was accorded the alleged zoning violator in this instance.

In the annals of our recorded opinions dealing with preliminary injunctions the factual situation presented by the instant case is unique. In this regard we cannot deny the validity of Mr. Justice JACKSON's observation in a closely analogous situation: "We must remember, too, that freedom from unreasonable search differs from some of the other rights of the Constitution in that there is no way the innocent citizen can invoke advance protection. For example, any effective interference with freedom of the press, or free speech, or religion, usually requires a course of suppressions against which the citizen can and often does go to the court and obtain an injunction. . . . But an illegal search and seizure usually is a single incident, perpetrated by surprise, conducted in haste, kept purposely beyond the court's supervision and limited only by the judgment and moderation of officers whose own interests and records are often at stake in the search. There is no opportunity for injunction or appeal to disinterested intervention. The citizen's choice is quietly to submit to whatever the officers undertake or to resist at risk of arrest or immediate violence."[6]

This case differs from the usual seizure in that it is a continuing one. Hence it provides an exception to Mr. Justice JACKSON's statement.[7] Are we to say

---

[6] *Brinegar v. United States,* 338 U.S. 160, 182, 69 S. Ct. 1302, 1314 (1949) (dissenting opinion).

[7] Compare *Lankford v. Gelston,* 364 F. 2d 197 (4th Cir. 1966), where a federal court issued an injunction against the police commissioner of the City of Baltimore restraining him from continuing improper police practices consisting of over three hundred searches of private dwellings in a period of nineteen days. At the

that because the police have the ability to act faster than the courts, the courts are powerless to intervene?

The decree of the Court of Common Pleas of Philadelphia County is reversed. The Police Department of the City of Philadelphia is hereby restrained from interfering with appellants' rights under the use and zoning permit issued October 18, 1966, until such time as the legal status of appellants' position is determined in a manner consistent with an orderly administration of justice.

The record is remanded to the Court of Common Pleas of Philadelphia County so that said court may take any action it deems appropriate not inconsistent with this opinion. The City of Philadelphia may, of course, pursue any course prescribed by law which it, like any other enforcement agency, might have available to it.

Preliminary injunction granted and record remanded. Costs on appellees.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

Resort to "uniqueness" seems to be the formula that this Court adopts when it seeks to avoid the restrictions occasioned by existing law and procedure. The following quotation from the City's brief clearly indicates that there are apparent reasonable grounds for the lower court's action and hence it should not be disturbed. "There has been no showing on the record in this case that an injunction is necessary to prevent irreparable injury to the appellants. Assuming that the

time the injunction was issued, the police commissioner under whose authority the searches had been conducted had retired and was succeeded by Mr. Gelston. The court ordered that an injunction be issued even though the search for the particular suspects involved in the dragnet had ceased and the commissioner had issued an order that there be no further searches without probable cause.

action of the City in abating the alleged zoning violation here has caused appellants to suffer loss of a certain amount of business, this harm can be remedied in an action at law for damages. Moreover, if appellants consider immediate remedial action to be essential to the maintenance of their business, there is available to them the statutory remedy of seeking a stay of the City's enforcement proceedings by petition to the Zoning Board of Adjustment (Philadelphia Code, §14-1705 (4)). See Smith v. Zoning Board of Adjustment, 407 Pa. 122, 124 (1962). The fact that appellants have seen fit not to seek such a statutory remedy casts serious doubt upon the imminency and irreparability of the alleged harm to them.

"Moreover, appellants have not shown that they have a clear and unmistakable right to the issuance of the permit that they seek.

"Firstly, there is serious doubt that appellants have any interest in the subject premises, 700 Cherry Street, that would entitle them to seek a permit for the operation of a business from a trailer. These premises are owned by the Redevelopment Authority of the City of Philadelphia; the Redevelopment Authority has not conveyed any interest in these premises to appellants. Appellants' sole claim of right to occupy these premises is by virtue of a sublease with the parking lot operator who has a month to month lease with the Redevelopment Authority for the operation of a parking lot. This Redevelopment Authority lease provides that the premises, or any portion thereof, may not be sublet; there is nothing in either lease that authorizes appellants to operate a business from a trailer on these premises.

"Secondly, assuming that appellants have some property right in the subject premises which would entitle them to apply for a permit, there is serious doubt that such a permit can legally be issued. Appel-

lants sought a permit for the operation of a bail bond business from a trailer in a 'C-4' Commercial zoning district, which limits uses to those occurring in a 'completely enclosed building.' A short consideration of the applicable statutory definitions will demonstrate the doubtfulness of appellants' right to the permit that they seek. The Zoning Code defines 'Completely Enclosed Building' as 'a building having walls on all sides and a roof so that the space within said building is enclosed in all directions. . .' Section 14-102 (14) of The Philadelphia Code. 'Building' is defined in the Code as 'a structure having a roof'. The Philadelphia Code §14-102 (9). 'Structure' is defined as 'any type or form of construction above the ground'. Philadelphia Code, §14-102 (54). The Department of Licenses and Inspections, charged by law with initially determining whether a requested use is permitted within the zoning districts of Philadelphia, has determined that a trailer with wheels attached cannot be considered a completely enclosed building within the meaning of The Philadelphia Zoning Code. It is not the purpose of this proceeding to determine the merits of this issue. The merits will be determined at the hearing before the Zoning Board of Adjustment and in any appeal from its decision. It need only be noted here that appellants have not demonstrated a 'clear and unmistakable' right to have their trailer motor vehicle, equipped with wheels, considered as a 'completely enclosed building' within the meaning of the above-quoted zoning provisions. In the light of applicable case law, the same conclusion must be reached with regard to appellants' contention that the Department of Licenses and Inspections has no right to revoke a permit. Ventresca v. Exley, 358 Pa. 98 (1948); Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497 (1954).

"Finally, it must be noted that no Preliminary Injunction should issue where there is an adequate rem-

edy at law. Such an adequate remedy at law is provided in an appeal to the Zoning Board of Adjustment, and subsequent appeal to the courts in the event of an adverse decision by the Board. . . .

"It is clear that under these provisions the Zoning Board can affirm or reverse the action of the Department of Licenses and Inspections here in refusing and revoking permits for the use of a trailer as offices for appellants' bonding business. Likewise, the Zoning Board, under these provisions is empowered to grant a variance from the terms of any Zoning Ordinance as well as stay any proceedings taken by the City for the abatement of a zoning violation.

"In fact, the record in this case demonstrates that appellants are quite aware of this remedy at law. On November 14, 1966, appellants appealed to the Zoning Board of Adjustment from the action of the Department of Licenses and Inspections in refusing to issue a permit and revoking a previous permit relating to the use of a trailer in a 'C-4' Commercial zoning district (N.T. 36). A hearing on this appeal was scheduled for January 19, 1967 (N.T. 37). At that hearing, the Zoning Board considered all contentions of appellants. It is respectfully submitted that the Zoning Board is the proper place in which to raise the various complex issues involved in the dispute between the parties in this case.

"Since appellants have failed to sustain the burden of showing that they have a 'clear and unmistakable' right and that irreparable harm not compensable by damages will result if an injunction is not issued and since appellants have failed to show any reason why they cannot seek a stay of proceedings before the Zoning Board as provided by statute nor finally, any reason why their interests and rights cannot be fully adjudicated and protected in a Zoning Board of Adjustment proceeding or any court appeal therefrom, it

is submitted that the Court below properly refused to issue a Preliminary Injunction." (Footnotes omitted).

I feel obligated, however, to make an additional comment. After the appeal had been taken to our Court from the refusal of the lower court to issue a preliminary injunction, counsel for appellants indulged in a procedure unknown to appellate practice and filed a petition for an order directing the issuance of a preliminary injunction pending disposition of the appeal which, in effect, was a request to this Court to preliminarily decide the very question raised by the appeal. The majority of this Court were unwilling to issue such an order, not only because the benefits of briefs and oral arguments were absent, but also because this would have established the dangerous procedural precedent of preliminarily deciding issues on appellate appeals, a practice that undoubtedly should not be permitted and which appellants sought to justify by citing a statute that had no application to the issue.

I dissent.

Mr. Justice JONES and Mr. Justice O'BRIEN join in this dissenting opinion.