**Warminster Township v.
Jami-Todd Enterprises**

*George M. Bush,* for plaintiff.
*Stephen I. Weiss,* for defendant.

BODLEY, J., March 12, 1973.—In this equity action, Warminster Township seeks a preliminary injunction which would require that use of the newly constructed commercial building involved herein be discontinued until certain alleged violations of the Warminster Township Zoning Ordinance and Building Code are "corrected and abated."

Some months before January 14, 1973, one of the township's officials discovered that defendant's then unoccupied building was not located exactly on the side property line but, rather, was canted somewhat.

One corner of the building touched the boundary line, but it then veered off slightly from back to front, leaving a small triangular piece of land approximately 40 to 50 feet long, and not more than five feet wide at its widest point, lying between the completed building and the neighboring parcel of ground.

Section 902 of Warminster Township's area regulations for C-Commercial Districts, the legality of which is not here challenged, provides, in part:

"*Side Yards.* Side yards are not required between buildings used exclusively for commercial or other nonresidential purposes, but in any case where yards are provided, each such side yard shall not be less than ten feet in width."

It is readily seen that this section requires that a building be wholly on the side property line, or wholly off it and at least 10 feet away.

When this technical violation of the side-yard area regulation was called to defendant's attention, his counsel set about negotiating for the transfer of the small triangular portion of land in question to his neighbor, in exchange for a certain other small parcel of land to be transferred to defendant. Negotiations for the transfer were not completed, however, by January 14, 1973.

On January 5, 1973, defendant's counsel requested a use and occupancy permit from the township. The request was again made on January 13, 1973. The township manager, after inspection of the property on January 13, 1973, refused to issue the permit, advising defendant's counsel that it could not be issued because certain requirements of the township had not been met. These included the approval of a "subdivision plan" in connection with the aforementioned exchange of the small parcels of ground, needed to straighten the side line of the property; the execution and de-

livery to the township, in escrow, of the deeds effectuating the transfers; approval of Department of Labor and Industry; approval of Underwriters' Laboratories; completion of concrete curbing; completion of the base course of blacktop upon a parking lot; and the placing of $7,000, in escrow with the township, which sum was necessary, it claimed, for the completion of certain remaining items. These included, inter alia, the blacktop finish course of the parking area; the planting of grass seed, shrubs, and the like (all of which cannot reasonably be completed until warm weather arrives), installation of a small amount of fence and the removal of certain rubbish.

Notwithstanding the township's decision of January 13th to withhold the issuance of the use and occupancy permit, a tenant of defendant, Elaine Powers, moved into the building on January 14th and thereafter has continued to occupy the building daily in pursuit of the tenant's business. On January 26th the township filed its complaint in equity seeking the preliminary injunction heretofore referred to.

Hearing was had on February 2, 1973, at which time the testimony revealed that the Department of Labor and Industry's approval of the commercial building had come into the township's hands on January 15th and the certificate of the Underwriters' Laboratories, on January 17th. In addition, it was undisputed that as of Saturday, January 13th, the date of inspection and rejection, 75 percent of the blacktop base course had already been completed and that the remainder had been completed by January 17th. It appeared that the concrete curbing had been completed during the week following the 14th; that plans for the so-called "subdivision," including linen copies thereof, were in the hands of the township as of the date of the hearing, as were the deeds relating to the property exchange

which would overcome the technical side-yard violation.

Further, during an inspection on February 1, 1973, the day before the hearing in this matter, the township's zoning officer found as defects only the following:

1. The building was not on the legal record property line (the escrowed deeds not having been recorded);

2. The shrubbery had not been planted (nor the grass);

3. The finish blacktop course had not been applied; and

4. The fence area had not been installed nor had certain rubbish outside the building been removed.

The unrebutted testimony adduced at the hearing revealed that the total cost for the completion of all work required by the township would not exceed the sum of $4,000, not the $7,000 demanded by the township, and that there is an escrow fund of $4,800 being held in a banking institution to cover the cost of such work.

The township seeks an extraordinary relief. It seeks to have defendant prohibited from using the building until such time as all of the remaining few details required by the township have been completed. There is no evidence to indicate that the building is unsafe for public use, nor that the health, safety or welfare of the community or those using the building are endangered.

It is hornbook law that a preliminary injunction will issue only where the rights of a plaintiff are clear and where there is an urgent necessity for the same in order to avoid irreparable harm which cannot be compensated in damages and, in addition, where greater injury will follow refusing the granting of the injunction than would follow the granting of the same: Berman v.

Philadelphia, 425 Pa. 13, 17 (1967). This rule is applied most emphatically where the injunction sought is mandatory in nature, as is the case here: Zebra v. School District of the City of Pittsburgh, 4 Comm. Ct. 642, 648 (1972). The burden of proof is upon the plaintiff.

It is evident from the mere statement of these principles that the injunction sought cannot be granted. While we cannot condone defendant's action, or that of its tenant, in taking occupancy of the premises without benefit of the required certificate of occupancy, neither can we approve the arbitrary position of the township in denying the issuance of the permit, at least after the major obstacles had been removed as they were within a few days after the tenant took possession.

We need not pass upon the question of whether the exchange of a few square feet of land, required to straighten a side-yard line, should be dignified by the designation "sub-division"; thus necessitating the ritual of approving subdivision plans (including expensive "linens") after the fashion of the procedures designed for the developer who subdivides a large parcel of land for housing development. But the chancellor does believe that the township's persistence in withholding issuance of the use and occupancy permit to this date is highly unreasonable. Completion of the rather minor items of work yet to be done, most of which cannot reasonably be completed at this time, can be adequately insured without requiring defendant to suffer economic loss. This would seem to be one of those all too frequent times when governmental officials fail to remember that their reason for being is to serve the citizens rather than to hinder and obstruct their lawful activities. The facts of this case suggest whim or caprice, if not vindictiveness, as the motivating force behind the township's decision.

It would appear reasonable to provide that the remaining few items be completed within a reasonable time and that the funds said to be held in escrow be set aside for this purpose, as well as for the protection of the township, since the township believes that it has an interest in the completion of such work as seeding, planting of shrubs and the like. Defendant is entitled to the certificate of use and occupancy which, to this date, has been denied it by the township officials. The township has not met its burden of proof and is not entitled to the preliminary injunction it seeks.

## DECREE NISI

And now, March 12, 1973, the prayer of plaintiff's complaint in equity is hereby denied. The proper official of the Township of Warminster is directed to issue a certificate of use and occupancy to defendant immediately upon defendant's delivery to plaintiff of the sum of $4,000 to be held by it in escrow. Defendant is ordered and directed to complete the hereinbefore mentioned items of work in and about its building within a reasonable time after weather permits the same to be done. For the purpose of securing completion of the work, including the finish blacktop course of the parking lot, the fencing, the planting of grass, shrubs, the introducing of fill and the completion of the buffer strip, the said sum of $4,000, to be held by the township in escrow, shall be used by it in payment of approved invoices, upon presentation, for labor and materials incurred by defendant for the completion of the work in question. In the event the said work has not been completed on or before June 1, 1973, plaintiff is hereby authorized to cause the said work to be completed and to be paid for with the said escrow funds. In either event, the balance remaining, if any, after all bills have been paid, shall be returned to de-

fendant. Costs of these proceedings shall be paid by plaintiff. If no exceptions are filed hereto within 20 days, this decree nisi shall be entered by the prothonotary, on praecipe, as the final decree.