566 A.2d 336

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant,

v.

Irving PORTNOY, Esquire: John Quinn, Esquire, Evans, Rosen, Portnoy, Quinn and Donohue a law firm and partnership, Appellees.

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1989.

Reargued Oct. 4, 1989.

Decided Nov. 3, 1989.

470

Jason W. Manne, Asst. Counsel, Pittsburgh, for appellant.

William R. Caroselli, Caroselli, Spagnolli & Beachler, Pittsburgh, for appellees.

Argued Feb. 4, 1989
Argued before CRAIG and PALLADINO, JJ., and NARICK, Senior Judge.
Reargued Oct. 4, 1989
Reargued before CRUMLISH, Jr., President Judge, and CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

PALLADINO, Judge.

The Commonwealth of Pennsylvania, Department of Public Welfare (DPW) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) sustaining the preliminary objections of Irving Portnoy, John Quinn, and Evans, Rosen, Portnoy, Quinn, and Donohue (collectively, Appellees) and dismissing the complaint of DPW without leave to amend. For the reasons set forth below, we affirm.

On March 2, 1988, DPW filed a complaint in equity with the trial court, alleging that Appellees currently represent, and have represented in the past, numerous medical assistance recipients in actions to recover damages, for personal injuries, from third party tortfeasors or their insurers. DPW pleaded that, under section 1409(b) of the Public Welfare Code (Code),[1] it has a right to a first lien on the proceeds of any judgment, award or settlement which reimburses a medical assistance recipient for medical bills incurred for the treatment of personal injuries for which another person was responsible. DPW further averred that section 1409(b) of the Code, 62 P.S. § 1409(b), requires attorneys representing medical assistance recipients to give notice to DPW of the commencement of suits against third party tortfeasors or their insurers, as well as notice of any settlement, judgment, or award. Finally, DPW alleged that attorneys are required to give DPW an opportunity to perfect its lien prior to the satisfaction of any judgment, award or settlement.

DPW averred that Appellees were aware of the foregoing notice provisions yet knowingly and intentionally failed to give DPW the requisite notice of suit, judgments/awards/settlements, and opportunity to perfect its liens. DPW alleged that Appellees' failure to so notify DPW was an attempt to defraud DPW of monies to which it was entitled. DPW alleged that it became aware of some cases in which Appellees had failed to notify DPW as

---

1. Act of June 13, 1967, P.L. 31, *as amended,* added by section 3 of the Act of July 10, 1980, P.L. 493, *as amended,* 62 P.S. § 1409(b).

required by section 1409.[2]  DPW further averred that because of Appellees' continued violation of section 1409, it could not ascertain the exact number of cases in which Appellees failed to give notice or the amount of money paid to recipients by third party tortfeasors or insurers in those unknown cases.  Finally, DPW alleged that it has been unable to obtain reimbursement totalling $25,360.89 from four named assistance recipients who had been represented by Appellees.  DPW's first amended complaint, paragraph 13.

In its prayer for relief, DPW sought: (1) a declaratory judgment that Appellees were required to comply with section 1409(b) of the Code, 62 P.S. § 1409(b); (2) an injunction prohibiting Appellees from failing to give the requisite notices to DPW and from distributing any proceeds from personal injury actions to medical assistance recipients without first affording DPW an opportunity to perfect a lien; (3) a mandatory injunction compelling Appellees to disclose to DPW those cases in which they distributed proceeds without complying with section 1409(b); (4) damages (including punitive damages) in excess of $20,000; and (5) interest, costs, and attorneys fees.

On March 10, 1988, Appellees filed preliminary objections to the complaint, including a preliminary objection in the nature of a demurrer.[3]  DPW thereafter filed a first amended complaint on March 14, 1988.  On April 4, 1988, Appellees filed a second set of preliminary objections, which set forth the same objections as their original objections and, in addition, contained a motion to strike because of a change in the party plaintiff without leave of court or consent of Appellees.

2.  In its first amended complaint, DPW listed fifteen assistance recipients who had been represented by Appellees.  DPW alleged that, in these cases, Appellees failed to give notice of suit, notice of settlement, and an opportunity to DPW to perfect its lien.  DPW's first amended complaint, paragraph 9.

3.  Appellees' preliminary objections also raised a failure to exhaust statutory remedies, lack of capacity to sue, and lack of conformity to law.and rule of court.  The objections further contained a motion to strike scandalous matter and a motion for more specific pleading.

By order dated May 3, 1988, the trial court sustained Appellees' preliminary objection in the nature of a demurrer and dismissed DPW's first amended complaint without leave to amend.[4] The trial court determined that disregarding the paragraphs of the complaint containing conclusions of law, expressions of opinion, and argumentative allegations, DPW failed to allege facts sufficient to state a cause of action. Further, the trial court declined to permit DPW to amend its complaint, noting that the Code did not provide for civil or criminal sanctions against attorneys for failure to comply with the notice provisions of section 1409(b), 62 P.S. § 1409(b). Finally, the trial court concluded that DPW was not entitled to declaratory or injunctive relief.

On appeal to this court, DPW argues that it should have been permitted to maintain a cause of action against Appellees for damages where it has alleged that it is unable to obtain reimbursement of medical assistance payments as a result of Appellees' knowing and intentional failure to comply with section 1409(b) of the Code, 62 P.S. § 1409(b). DPW also asserts that the trial court erred in concluding that attorney's fees, costs, and punitive damages could not be awarded to DPW. DPW also contends that the absence of a statutory remedy against attorneys in section 1409(b) should not preclude an action in equity to enjoin Appellees from intentionally failing to comply with the notice requirements. Finally, DPW asserts that it alleged facts sufficient to state a cause of action[5] or, in the alternative, that the

4. In its opinion in support of the May 3, 1988 order, the trial court also addressed the remainder of Appellees' preliminary objections. The trial court overruled Appellees' objection which asserted that DPW failed to exhaust a statutory remedy. The trial court also denied Appellees' motion to strike for change of party plaintiff. The trial court granted Appellees' motion to strike scandalous and impertinent matter and motion for more specific pleading. Finally, the trial court noted that Appellees withdrew their objection to DPW's capacity to sue. Because we conclude that the trial court properly sustained Appellees' preliminary objection in the nature of a demurrer, we need not address the remainder of the preliminary objections.

5. DPW contends that where, as here, a violation of a statute is alleged, it is proper to plead the relevant statutory provisions in the complaint. Assuming, without deciding, that DPW is correct, we conclude, as set forth in the remainder of our opinion, that the statutory provisions set

trial court should have permitted amendment of the complaint.

Initially, we note that preliminary objections in the nature of a demurrer will be sustained only where a complaint is clearly insufficient to establish any right to relief; any doubt must be resolved in favor of the pleader. *County of Allegheny v. Commonwealth of Pennsylvania*, 507 Pa. 360, 490 A.2d 402 (1985). A demurrer admits as true all well-pleaded facts, but does not admit conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Martin v. Commonwealth*, 124 Pa.Commonwealth Ct. 625, 556 A.2d 969 (1989). In order to review DPW's claims for relief in this case of first impression, we must first examine Article XIV of the Code, 62 P.S. §§ 1401–1411, the statutory framework under which DPW seeks relief.

### ARTICLE XIV OF PUBLIC WELFARE CODE

Article XIV of the Code, entitled "Fraud and Abuse Control," sets forth a detailed scheme of provider prohibited acts and recipient prohibited acts.[6] Section 1407(a) of the Code, 62 P.S. § 1407(a), enumerates the various provider prohibited acts. Section 1407(b) states that a violation of any of the provisions of subsection (a), with the exception of subsection (a)(11), shall constitute a felony of the third degree, with a maximum penalty of a fine of fifteen thousand ($15,000) dollars and seven years imprisonment. 62 P.S. § 1407(b)(1). Section 1407(b) also provides that any person convicted under subsection (a) shall be ineligible to participate in the medical assistance program for a period of

forth in DPW's complaint do not provide a basis for granting the relief which DPW has requested.

6. Section 1401 of the Code, 62 P.S. § 1401, defines "provider" as "any individual or medical facility which signs an agreement with the department to participate in the medical assistance program, including, but not limited, to licensed practitioners, pharmacies, hospitals, nursing homes, clinics, home health agencies and medical purveyors." Section 1401 of the Code, 62 P.S. § 1401, defines "recipient" as "an eligible person who receives medical assistance from a participating provider."

five (5) years from the date of conviction. 62 P.S. § 1407(b)(3). Finally, section 1407(c)(1) of the Code, 62 P.S. § 1407(c)(1) provides that if DPW determines that a provider has committed any prohibited act or has failed to meet any requirement under subsection (a), DPW has the authority, upon notice to the provider, to terminate the provider agreement and to institute civil proceedings for twice the amount of excess benefits or payments plus legal interest from the date of the violation(s).

Section 1408 of the Code, 62 P.S. § 1408, sets forth recipient prohibited acts, including the concealment or failure to disclose to DPW the occurrence of any event affecting the recipient's initial or continued right to any benefit or payment, with the intention of fraudulently securing such benefit or payment either in a greater amount or quantity than is due or when no payment or benefit is authorized. 62 P.S. § 1408(a)(2); *see also* section 481 of the Code, 62 P.S. § 481 (criminal penalties for securing assistance or food stamps by means of willfully false statement, misrepresentation, or impersonation). Section 1408(b) of the Code, 62 P.S. § 1408(b), also provides for criminal penalties for violations of subsection (a) as well as civil remedies available to DPW.[7]

Section 1409(b) of the Code, 62 P.S. § 1409(b), states that when benefits are provided or will be provided to a beneficiary[8] because of an injury for which another person is liable or for which an insurer is liable, DPW shall have the right to recover from such person or insurer the reasonable value of benefits provided. Section 1409(b)(5) provides that if either the beneficiary or DPW brings an action against a

7. For example, where a recipient has violated section 1408, subsections (a)(3), (4), or (5), DPW may terminate a recipient's right to medical assistance benefits for up to one year. Section 1408(c)(3) of the Code, 62 P.S. § 1408(c)(3). For these same violations by a recipient, DPW is also authorized to institute civil proceedings against a recipient for the amount of benefits obtained plus legal interest from the date of the violation.

8. Section 1409(b)(13) of the Code, 62 P.S. § 1409(b)(13) defines "beneficiary" as "any person who has received benefits or will be provided benefits under this act because of an injury for which another person may be liable."

third party or insurer, the beneficiary or DPW shall give to the other written notice of the filing of the action within thirty (30) days. 62 P.S. § 1409(b)(5). Notice is to be given by personal service or certified or registered mail and proof of such notice shall be filed in such action or claim. Section 1409(b)(5) of the Code, 62 P.S. § 1409(b)(5).

Section 1409(b)(7) provides that, where the action against a third party or insurer is brought by the beneficiary alone, the court shall order that reasonable litigation expenses and attorney's fees be paid first from any judgment or award. 62 P.S. § 1409(b)(7)(i). This section also states that, after the aforementioned expenses are paid, the court shall, upon application by DPW, allow as a first lien, against the amount of the judgment or award, DPW's expenditures for the benefit of the beneficiary under the medical assistance program. Section 1409(b)(9) provides that no judgment, award, or settlement in any action by a beneficiary for personal injury damages shall be satisfied without first giving DPW notice and an opportunity to perfect and satisfy its lien. 62 P.S. § 1409(b)(9).

Section 1409(b)(10) provides that where DPW has perfected a lien upon a judgment or award in favor of a beneficiary against a third party for an injury for which the beneficiary has received medical assistance benefits, DPW shall be entitled to a writ of execution as lien claimant to enforce payment of the lien against the third party with interest and costs. 62 P.S. § 1409(b)(10). This section also states that if the judgment or award recovered has been paid to the beneficiary, DPW shall be entitled to a writ of execution against such beneficiary to the extent of DPW's lien. Finally, section 1409(b)(12) states that the beneficiary must give notice of the institution of legal proceedings against a third party or insurer as well as notice of settlement, and that all such notices shall be given by the attorney retained to assert the beneficiary's claim. 62 P.S. § 1409(b)(12).

DPW asserts that the foregoing statutory provisions, permitting DPW to seek reimbursement from a third party tortfeasor or the recipient of medical assistance benefits,

should not be deemed exclusive remedies.[9] DPW also contends that section 1409(b) should be construed to allow DPW to seek reimbursement of medical assistance payments from attorneys who fail to comply with the statutory notice provisions, alleging that the lien procedure outlined above would otherwise be rendered a nullity. DPW also relies upon section 1409(b)(11) of the Code, 62 P.S. § 1409(b)(11), which provides as follows:

Except as otherwise provided in this act, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the department's claim for reimbursement of the benefits provided any lien filed pursuant thereto, but in no event shall the department's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.

However, we note that, in contrast to sections 1407 and 1408 of the Code, 62 P.S. §§ 1407, 1408, section 1409 does not provide criminal penalties or civil remedies to redress attorney noncompliance with the notice provisions. "In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect." 1 Pa.C.S. § 1504. Where the legislature *has* specifically provided penalties and remedies for provider and recipient prohibited acts, we are reluctant to supply penalties and remedies

9. DPW contends that because its right to reimbursement has its roots in common law, the remedies available to it under the Code should be considered cumulative, rather than exclusive. DPW correctly points out that at common law, there was an implied duty on the part of a *recipient* of public assistance, or his estate, to make reimbursement, where possible. *Wait's Estate,* 336 Pa. 151, 7 A.2d 329 (1939). However, DPW cites no common law cases to support its claim that reimbursement may be sought from an *attorney* representing a recipient of public assistance.

against attorneys when the legislature *has not* seen fit to do so. Accordingly, we conclude that the trial court committed no error in determining that DPW failed to state a cause of action against Appellees for compensatory damages under section 1409 of the Code, 62 P.S. § 1409.[10]

## PUNITIVE DAMAGES AND ATTORNEY'S FEES

■ Similarly, DPW contends that the trial court erred in concluding that it could not recover attorney's fees, costs or punitive damages. As noted above, where the legislature has specifically provided civil and criminal remedies and sanctions against providers and recipients, this court will not attempt to rewrite a statute to supply additional remedies against attorneys. While we are sympathetic to the concerns of DPW in this case in preventing welfare abuses, careful review of section 1409(b) of the Code, 62 P.S. § 1409(b), discloses no statutory authority for an award of punitive damages or attorney's fees against attorneys based upon noncompliance with the notice provisions.

## DECLARATORY AND INJUNCTIVE RELIEF

■ Finally, DPW contends that the trial court erred in concluding that DPW was not entitled to equitable relief in this case. DPW sought, in its first amended complaint, a declaration that Appellees must comply with the notice provisions of section 1409(b) of the Code, 62 P.S. § 1409(b).

10. DPW alleges that damages and injunctive relief are available because it pleaded the elements of a civil conspiracy. A civil conspiracy is a combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose. *Raneri v. DePolo*, 65 Pa.Commonwealth Ct. 183, 441 A.2d 1373 (1982). In this case, DPW alleged in its complaint that when Appellees failed to give notice under section 1409(b), 62 P.S. § 1409(b), they acted at the direction and with the authorization of their clients. DPW's first amended complaint, paragraph 12. DPW further alleged that Appellees' failure to give the requisite notice was the result of a conspiracy with their clients to defraud DPW of monies to which it was entitled. DPW's first amended complaint, paragraph 12. The trial court determined that DPW failed to provide sufficient factual allegations in support of its claim that Appellees engaged in a civil conspiracy with their clients. DPW concedes in its brief to this court that it is *not* contending that Appellees have personally profited by allegedly violating section 1409(b). DPW's Brief at 6.

Section 7533 of the Declaratory Judgments Act, 42 Pa.C.S. § 7533, provides that any person whose rights, status or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status, or other legal relations thereunder. Relying upon 42 Pa. C.S. § 7533, the trial court concluded that DPW did not adequately set forth in its complaint which part of section 1409 of the Code, 62 P.S. § 1409, was in controversy and in need of construction. We find no error in the trial court's determination.

DPW asserts that the trial court erred in denying injunctive relief in this case. DPW sought an injunction prohibiting Appellees from failing to give notice under section 1409 of the Code, 62 P.S. § 1409, and from distributing proceeds of personal injury awards, judgments, or settlements without first affording DPW an opportunity to perfect its lien. In addition, DPW sought a mandatory injunction compelling Appellees to disclose to DPW information regarding those cases in which Appellees distributed proceeds without complying with the section 1409 notice requirements. Appellees contend that DPW's complaint does not establish that it will suffer irreparable harm nor that it lacks an adequate remedy at law.

The trial court concluded that the absence of legal and/or equitable remedies as to attorneys in article XIV of the Code precluded it from granting an injunction. Further, the trial court stated that a mandatory injunction "should not be granted when its enforcement will require too great an amount of supervision by the court." *Commonwealth of Pennsylvania v. Portnoy,* (Civil Division, No. GD88–03677, filed May 3, 1988), slip op. at 20. We agree. This court has held that a party seeking a mandatory injunction must present a stronger case than that required for an injunction which restrains action. *Allen v. Colautti,* 53 Pa.Commonwealth Ct. 392, 417 A.2d 1303 (1980). A party must show that he is clearly entitled to immediate relief and that he will suffer irreparable harm if

relief is not granted. *Id.* In its complaint, DPW has not alleged that it will suffer irreparable harm.[11] Further, although DPW alleged that it has been unable to obtain reimbursement from a number of medical assistance recipients, DPW has not averred what attempts it has made to obtain reimbursement from the recipients and the reasons for its lack of success. Therefore, the trial court did not err in denying injunctive relief in this case.

Accordingly, we affirm.

## ORDER

AND NOW, November 3, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

CRAIG, Judge, dissenting.

Are the courts of this Commonwealth powerless to require that attorneys-at-law—officers of the court—obey the statutory law which clearly requires them to give notice to the Department of Public Welfare (DPW) of suits against third parties on behalf of public assistance beneficiaries?

Because the statutory duty is clear and explicit, its violation constitutes irreparable injury as a matter of law, and there is no other remedy at law, by statute or otherwise, hence the judicial power and duty to enjoin disobedience of the legislative mandate is plain. *Berman v. Philadelphia,* 425 Pa. 13, 228 A.2d 189 (1967).

### 1. The Legal Duty Is Clear

Section 1409(b)(12) of the Public Welfare Code, Act of June 13, 1967, P.L. 31 *as amended,* 62 P.S. § 1409(b)(12) unambiguously states:

(12) In the event that the beneficiary ... brings an action against the third person whom may be liable for the

11. In its answer to Appellees' preliminary objections, DPW contends that violation of section 1409(b) of the Code, 62 P.S. § 1409(b), constitutes irreparable harm *per se.*

injury, notice of institution of legal proceedings, notice of settlement, and all other notices required by this act shall be given to the Secretary....

*All such notices shall be given by the attorney retained to assert the beneficiary's claim,* or by the injured party beneficiary ... if no attorney is retained. (Emphasis added.)

This court should not give license to any member of the Bar to ignore that explicit legal duty, enacted by the elected lawmakers and obviously designed to facilitate reimbursement to the public treasury, when proper, so that the public assistance program may aid as many citizens as possible.

### 2. Violation of Law Necessarily Imports Immediate and Irreparable Harm

With respect to necessity of supporting injunctive relief by the existence of immediate and irreparable harm, this court has stated:

This traditional prerequisite to the issuance of an injunction is not applicable where as here the Legislature declares certain conduct to be unpermitted and unlawful. For one to undertake and pursue such statutorily prohibited conduct constitutes irreparable injury which is the proper subject of injunctive relief. *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 52 A.2d 317 (1947).

*City of Erie v. N.W. Pa. Food Council,* 14 Pa.Commonwealth Ct. 355, 364, 322 A.2d 407, 412 (1974).

In *Pa. P.U.C. v. Israel,* 356 Pa. 400, 52 A.2d 317, the Supreme Court approved Judge Woodside's oft-quoted statements on the subject:

When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury.

*Israel,* 356 Pa. at 406, 52 A.2d at 321.

To allow violation of the statutory mandate in this case, by one group of attorneys, is to allow the thousands of

lawyers across the state to disobey the law which they have sworn to uphold, underscoring the force of Judge Woodside's further statement, that spreading unlawful conduct is irreparable injury of the most serious nature.

### 3. Injunctive Relief Is Proper Because No Alternative Relief Exists

Although equitable relief is not available when an adequate remedy by common law or statute exists, and has not been exhausted, this court is apparently unanimous in agreeing that neither statute nor common law provide the Commonwealth with any remedy against the *attorneys*, so that, accordingly, injunctive compulsion is fully warranted.

If, as the majority opinion here holds, the state cannot recover damages from the lawyers when their violation of the notice requirement results in loss to the public treasury, there is no adequate common law remedy available.

Because the majority opinion also rightly notes that the Public Welfare Code contains no statutory provisions to implement performance of the lawyers' notice duty, there is no alternative statutory remedy. And, with no alternative statutory remedy provided against the lawyers, this court certainly cannot withhold equitable relief to the Commonwealth on the ground that DPW has failed to exhaust a statutory remedy against the lawyer appellees.

The availability of some statutory remedies against public assistance *beneficiaries* does not, in law or logic, constitute a remedy against the *attorney's* duty to give notice. A remedy against public assistance recipients, particularly if delayed by lack of notice, is not likely to be productive in any practical sense, and will therefore not be adequate. Without notice from the counsel who are prosecuting proceedings against third-party defendants, the state's remedies to obtain reimbursement from beneficiaries become meaningless. For example, possession of a lien on proceeds, such as the law here gives the state, is of no significance if there is no notice of the lien's existence.

Moreover, if lawyers are under no compulsion to give notices of these claims or recoveries, some attorneys will be prompted by their consciences and respect for law to give the notices, while others will not. The result will be unequal treatment of welfare beneficiaries, with some obliged to provide reimbursement while other recipients do not.

### Conclusion

Issuance of the injunction, to require obedience to the law and thereby to support the strength and fairness of the public assistance system, is warranted in every respect.

BARRY and McGINLEY, JJ., join in this dissent.