Carolee **MEDICO, Prothonotary,** Appellant,

v.

Thomas A. **MAKOWSKI, Esquire, Chairman, Luzerne County Commissioners, Thomas P. Pizano, Luzerne County Commissioner, Stephen A. Urban, Luzerne County Commissioner, and Luzerne County Commissioners.**

Commonwealth Court of Pennsylvania.

Argued Nov. 7, 2001.

Decided March 1, 2002.

Samuel C. Stretton, West Chester, for appellant.

James P. Blaum, Wilkes-Barre, for appellees.

Before DOYLE, Senior Judge (P.),[1] COLINS, President Judge, McGINLEY, Judge,[2] SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, and LEADBETTER, Judge.

[1] This case was heard prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

[2] Judge Kelley heard argument and subsequently recused; Judge McGinley was substituted for Judge Kelley on the panel to consider the case on briefs.

COLINS, President Judge.[3]

Carolee Medico, Prothonotary of Luzerne County, appeals the Luzerne County Court of Common Pleas orders denying her request for mandamus and injunctive relief and her post trial motions.

In an equity action filed against the Luzerne County Commissioners and Luzerne County, Medico requested an order directing the Luzerne County Commissioners to fund the purchase of additional shelving and a computer system to automate the prothonotary's office and enjoining the Commissioners from not properly funding those requests and from not complying with their statutory obligation to provide necessary support, services, equipment, and supplies.

After taking evidence, the trial court concluded that the requested relief was not warranted by the evidence and/or the law. The court concluded that although the requested shelving and computer system might make the operation of the prothonotary's office more efficient, Medico failed to demonstrate that the prothonotary's office is unable to function without judicial intervention, that the commissioners' denial of her requests was politically motivated, or that the requested shelving and computer system were essential and necessary for the continued operation of the office. The judge found that the prothonotary's office had access to ample storage space and that shelving requested by other county row officers was paid for from the officer's material and supplies account. Given the County's overall plan for automation, the court found that implementing Medico's choice of computer system for the prothonotary's office would not be feasible, but rather would be disruptive. Given the

record in this case, he opined that the choice of a computer system is a political question and not a judicial one.

On appeal, Medico argues 1) that the trial judge erred in denying mandamus and injunctive relief in that he failed to give adequate weight to 16 P.S. § 508(c), which requires that preference be given to the prothonotary's choice; and 2) that in concluding that the issues raised in Medico's complaint are political questions, the judge ignored existing case law and the statutory obligations of county government.

■■■ Mandamus is an extraordinary writ that is available to compel a ministerial act or mandatory duty where the plaintiff establishes a clear legal right to relief, a corresponding duty to act in the defendant, and the lack of any other adequate remedy. *Advantage Development, Inc. v. Board of Supervisors of Jackson Township*, 743 A.2d 1008 (Pa.Cmwlth.2000). Mandamus is not an over-the-counter remedy available on demand; rather it is dispensed sparingly and as a last resort. *Bald Eagle Area School District v. County of Centre*, 745 A.2d 689 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* —— Pa. ——, 792 A.2d 1254 (2000). Because a mandatory injunction compels a defendant to perform an act, rather than to refrain from acting, courts will grant a mandatory injunction only upon a very strong showing that the plaintiff has a clear right to relief. *Department of Public Welfare v. Portnoy*, 129 Pa.Cmwlth. 469, 566 A.2d 336 (1989), *affirmed,* 531 Pa. 320, 612 A.2d 1349 (1992).

The prothonotary is an elected county officer.[4] "The office of the prothonotary

---

**3.** This case was assigned to this author on January 15, 2002.

**4.** "County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs,

shall be provided with all necessary accommodations, goods and services pursuant to section 3722 (relating to general facilities and services furnished by county)." 42 Pa.C.S. § 2734(b).

The County Code[5] charges the county commissioners with responsibility for the management and administration of county fiscal affairs. Section 1701, 16 P.S. § 1701. The commissioners prepare and adopt an annual county budget, using "as a guide" statements of revenues and expenditures and appropriation requests made by county officers. Section 1781, 16 P.S. § 1781. Commissioners are empowered to create and maintain a separate capital reserve fund for capital expenditures limited to "the construction, purchase or replacement of or addition to county buildings, equipment, machinery, motor vehicles or other capital assets.... The fund shall be controlled, invested, reinvested and administered, and the moneys therein and income from such moneys expended, ... in such manner as may be determined by the county commissioners." Section 512, 16 P.S. § 512.[6]

■ A budget under the County Code is "a method whereby expenditures are controlled and limited during the fiscal period by designating the amounts of money legally at the disposal of the commissioners, and the purposes for which they may be expended." *Kistler v. Carbon County,* 154 Pa.Super. 299, 35 A.2d 733, 735 (1944). Commissioners "cannot, by adopting a budget, limit or avoid liabilities imposed upon the county by the Constitution or by statutes .... The county commissioners are obliged to meet constitutional and statutory obligations, and they can be compelled to do so by mandamus." *Id.* In counties of the third class, such as Luzerne County, the county commissioners are statutorily obligated to furnish office furniture, equipment and supplies, and services to county officers at the cost of the county. County Code Section 508(a) and (b), 16 P.S. § 508(a) and (b).

Before purchasing office furniture, equipment, equipment or supplies, ... county officers who are to be furnished with any of such items shall have the opportunity to state in writing his preferences as to the type and make of such articles or any of them. The commissioners shall, when feasible, purchase the supply to each officer his preference in such articles when such preference has been given.

County Code Section 508(c), 16 P.S. § 508(c).

Medico argues that the Commissioners slighted their statutory duty to provide funding for shelving necessary for the storage and maintenance of court records and failed to approve the purchase or lease of the computer system chosen by Ms. Medico and, she maintains, necessary to the appropriate electronic maintenance of court records. In support of this argument, Medico cites *Pennsylvania State Association of County Commissioners v. Commonwealth,* 545 Pa. 324, 681 A.2d 699 (1996), *Snyder v. Snyder,* 533 Pa. 203, 620 A.2d 1133 (1993), and *Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971), *cert. denied,* 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971), for the proposition that courts may

---

registers of wills, recorders of deeds, prothonotaries, clerks of courts, and such others as may from time to time be provided by law." Pa. Const. Art. IV, § 9. Contrary to Medico's contention on page 29 of her brief, Schedule to Article V, § 15 does not establish the office of prothonotary as part of the judiciary.

**5.** Act of August 9, 1955, P.L. 323, *as amended.*

**6.** Added by Section 1 of the Act of July 17, 1959, P.L. 550.

compel the legislative branch to provide additional funding that is reasonable and necessary for the judiciary to carry out its mandated responsibilities, powers, and duties.

■ While these cases might be instructive, the legal analysis of these decisions (i.e., that the judicial branch, as an independent branch of government, has inherent power to compel the legislative branch to furnish sufficient funds for reasonable judicial functioning) applies only to exceptional cases in which underfunding poses a genuine threat to the judiciary's ability to adequately administer justice. *Jiuliante v. County of Erie*, 540 Pa. 376, 385–86, 657 A.2d 1245, 1250 (1995); *Snyder* (citing *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992) and *Carroll*). Outside these exceptional cases, challenges based on a county's statutory obligation to provide general facilities and services require the courts "to determine the reasonable necessity of any funding request, while the plaintiff [] has the burden of proving that its funding requests are reasonably necessary." *Jiuliante*, 540 Pa. at 387, 657 A.2d at 1250.

Although the prothonotary's office maintains court records, the present case focuses on a county officer attempting to compel the county to provide additional funding by asserting the county's statutory obligation to furnish general facilities and services. That being the case, we must conclude that the trial court applied the correct legal analysis: whether the requested funding and the requested computer system were reasonably necessary to the prothonotary's office's ability to adequately carry out its statutory duties such that the Commissioners violated a mandatory duty to provide necessary office furniture, equipment, and/or supplies.

■ Having reviewed the record in its entirety, we conclude that the evidence supports the trial court's finding that the County Commissioners provided the prothonotary's office with adequate storage space and adequate funding from which it could purchase necessary equipment and supplies. The Commissioners had no statutory duty to allocate capital funds to the prothonotary's office. It was within the Commissioners' discretion to deny capital expenditures and to reject Medico's preferred computerization proposal because it was contrary to the County's information technology strategy and therefore not "feasible" within the meaning of County Code Section 508(c), 16 P.S. § 508(c), as set forth above.

Although Medico and members of her staff obviously perceive a need for additional shelving to facilitate record storage, the evidence does not demonstrate that the lack of shelving poses a threat to the continued operation of the office. It is undisputed that the prothonotary's office stores court records in its main office in the courthouse, in the basement of the courthouse, and in space provided by the county in the Thomas C. Thomas Building. Deputy Prothonotary Anthony Alu testified that for the sake of convenience, files for the most recent four years are kept in the main office, files for the previous three years are kept in the basement, and earlier files at the Thomas C. Thomas Building. (11–28–00 Hearing Transcript, p. 138.) Mr. Alu acknowledged that the office has enough space in the Thomas C. Thomas Building to store files for another five or six years. (11–28–00 Hearing Transcript, p. 159.)

The evidence unequivocally shows that every year since Medico took office, the Commissioners increased the prothonotary's overall budget. In 1998 and 1999, the Commissioners allocated capital funds to the prothonotary's office; and in 1999, the office expended only $17,749 out of a capital allocation of $40,500. (11–28–00 Hear-

ing Transcript, p. 60.) Yet in April 2000, Medico submitted a $9,542 requisition for supplies for shelving to be charged to the capital account, even though her budget had no capital component. The Commissioners approved the request for shelving, but to be billed to the prothonotary's material and supplies budget. (Exhibit P–1.) Luzerne County Commissioner Thomas Makowski testified that the Commissioners allocated the capital fund for 2000 based on necessity and that many county offices, including the prothonotary's office, received no capital budget. (February 2000 Hearing Transcript, pp. 302–303.)

As for the computer system, Medico selected a system and submitted her proposal or recommendation to Stephen Englot, the County's Director of Data Processing and technology consultant to the Commissioners. Mr. Englot testified that the County commissioned Trilogy, Inc. to develop a strategic technology plan that included cross-departmental automation and interaction. (February 2000 Hearing Transcript, p. 345.) He testified that he reported to the Commissioners that Ms. Medico's proposed computer system was contrary to the County's information technology strategy. (February 2000 Hearing Transcript, p. 351.) Commissioner Makowski testified that the Commissioners denied Medico's computerization request on the recommendation of Mr. Englot that it was not the most efficient or cost-effective system given the County's overall information technology plan. (February 2000 Hearing Transcript, pp. 311–312.)

Contrary to Medico's suggestion, the trial court did not "hold" that the issues in this case involve a political question that did not warrant court intervention. During the hearings, the judge warned that he would not be drawn into deciding the merits of one computer system or another, and he opined that the issues raised in the case represent nothing more than a political squabble, but only after concluding that the evidence fell short of the standard that would warrant judicial intervention into county fiscal matters in the nature of mandamus or mandatory injunction. Ms. Medico failed to demonstrate that the Commissioners violated their statutory duty or that she has a clear right to the relief requested.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 1st day of March 2002, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is affirmed.

PELLEGRINI, Judge, Dissenting.

Because I believe elected row officers are vested with discretion on how their offices are to function, I respectfully dissent from that portion of the majority's decision that the Luzerne County Commissioners (County Commissioners) had the authority to refuse Carolee Medico's (Prothonotary) request for funding because they did not agree with her choice of a computer program which she felt was best for the operation of her office. The electors of Luzerne County elected her to make that decision, not the County Commissioners.[1]

42 Pa.C.S. § 2734(a) specifies:

---

1. I agree with that portion of the majority's decision rejecting the Prothonotary's argument regarding the County Commissioners' denial of her request for funding for additional storage space. The record not only supports that she was provided with adequate space, including space at the Thomas C. Thomas Building, which had enough space to store files for an additional five years, but that she had been provided with annual increases

There shall be an office of the prothonotary in each county of this Commonwealth, which shall be supervised by the prothonotary of the county who shall, either personally, by deputy or by other duly authorized employees or agents of the office, exercise the powers, and perform the duties by law vested in and imposed upon the prothonotary or the office of the prothonotary.

42 Pa.C.S. § 2734(b) further provides: The office of the prothonotary *shall be provided with all necessary accommodations, goods and services* pursuant to section 3722 (relating to general facilities and services furnished by county). (Emphasis added.)

In this case, the Prothonotary filed with the Court of Common Pleas of Luzerne County (trial court) a request for mandamus and injunctive relief from the County Commissioners contending that she was not provided with all necessary accommodations, goods and services and requesting adequate funding for her office so she could purchase a computer system of her choice for automated record keeping. Not contending that she did not need a· computer system, the County Commissioners instead defended the denial of the funding request because, according to the testimony of the County's Director of Data Processing, the Prothonotary's proposed computer system was contrary to the County's information technology strategy and was not the most efficient or cost-effective system given the County's overall information technology plan. Relying on that testimony and apparently holding that the County Commissioners can withhold funding if they disagree with the Prothonotary's choice of computer system, the trial court and the majority conclude that she was provided with all the goods and services that she needed.

I dissent because I disagree with the majority's conclusion that the County Commissioners have the authority to determine what is necessary for the Prothonotary to run her office as she sees fit, especially when it involves the docketing system which is the core function a prothonotary performs. *See* 42 Pa.C.S. § 2737(3) and (4). If the program the County's Director of Data Processing wants to purchase does not work or is inefficient, he does not have to answer to the voters; the Prothonotary does. Because docketing and record keeping are the core functions that a prothonotary performs, a prothonotary has sole discretion under 42 Pa.C.S. § 2734(a) to determine what kind of system should be utilized to carry out the functions of her office. Because the County Commissioners did not fund that request only because they wanted another system chosen and not for any monetary reason, they did not provide her with adequate resources for not allowing her to carry out the duties for which she was elected. Accordingly, for these reasons, I dissent.

Judge FRIEDMAN joins in this dissent.

to her overall budget in 1998 and 1999, and in 2000, funds were only allocated based on necessity, and many offices, including the Prothonotary's, received no capital budget.