OPINION OF THE COURT HARDIMAN, Circuit Judge. A bankruptcy trustee sometimes must act quickly to safeguard property of the estate. In this case, Chapter 7 Trustee Lisa Swope took control of a commercial leasehold possessed by Phoenician Mediterranean Villa, LLC in a building owned by the debtor. Phoenician requested equitable relief to regain possession of its leasehold, claiming that Swope violated the law when she accepted the key to locks that had been changed. The United States Bankruptcy Court for the Western District of Pennsylvania denied the relief sought by Phoenician, holding that Swope was quali-fíedly immune from suit. The District Court affirmed and Phoenician filed this appeal. The question presented is whether qualified immunity applies to discretionary actions taken by a trustee to preserve the bankruptcy estate’s assets, and whether that immunity protects Trustee Swope’s conduct in this case. We will affirm because Swope exercised reasonable care under the circumstances and did not violate clearly established law. I J & S Properties, LLC filed a Chapter 7 petition in the Bankruptcy Court on July 10, 2013. Attorney Lisa Swope was appointed as Chapter 7 Trustee of the estate. The estate’s largest asset was a building located in Altoona, Pennsylvania, in which Phoenician was a lessee and previously operated a restaurant. In re J & S Props., LLC, 545 B.R. 91, 94 (Bankr. W.D. Pa. 2015). Pursuant to a court order dated November 5, 2013, Swope rejected Phoenician’s lease to facilitate a sale of the property. Although Phoenician was not operating the restaurant at that time, its tenancy had not expired. After the lease was rejected, Phoenician attempted to remove personal property from the restaurant, but Swope objected because the Bankruptcy Court had not determined ownership of the contents of the restaurant, although Phoenician claimed to own all of it. After learning from J & S’s principal, James Focht, that the restaurant had been shut down, that Phoenician had cancelled its insurance on the premises, and that heating the property could be an issue with an “anticipated arctic blast,” Swope met at the property with Phoenician’s principal, Husam Obeid, along with his counsel and a contractor on January 3, 2014, Id. At that meeting, Obeid gave Swope a key to the premises and the contractor recommended that the thermostat be set to at least “sixty degrees Fahrenheit to prevent the pipes from freezing.” Phoenician Mediterranean Villa, LLC v. Swope, 554 B.R. 747, 750-51 (W.D. Pa. 2016). Unfortunately, Obeid did not heed this advice, the pipes burst, and the property was flooded on January 13, 2014, Obeid contacted a disaster restoration company, but they apparently refused to work on the property “because there were problems with insurance coverage, the relationship between the parties was acrimonious, and no one agreed to provide the company with a hen.” Id. at 751. According to Trustee Swope, Obeid and Focht “did not trust each other” and had previously-tried to hurt each other’s businesses. Id. at 750. It was in this context that Swope set about to protect, or “adequately preserve! ],” the largest asset of the bankruptcy estate. Id. Swope asked for another meeting on January 15, 2014 to assess the damage to the property and discuss the status of the building’s insurance. Obeid and his counsel did not show up, asking that the meeting be rescheduled and held without Focht; Swope declined the request “[g]iven the urgent nature of the situation.” In re J & S Props., 545 B.R. at 95. Swope tried to inspect the premises but discovered the key Obeid had given her did not open the locked interior door to the building.[1] Focht then “had the locks changed and provided Trustee Swope with the key” on January 16. Phoenician Mediterranean Villa, 554 B.R. at 751. Swope claimed in an email to Phoenician that in accepting control of the building, she was attempting to preserve the assets to the best of her ability. On the same day, Swope filed an emergency motion asking the Bankruptcy Court to grant her immediate possession of the property and its contents. In the meantime, she retained the “sole key” and thus control of the premises, and subsequently provided both parties with only “supervised access” to the property. Id. Phoenician filed a complaint in equity to “regain possession of the premises,” and the Bankruptcy Court conducted an emergency hearing on January 24, 2014. Phoenician Br. 12.[2] After the hearing, at which Swope testified, the Court denied Phoenician’s requests for an injunction and temporary restraining order on January 27. During the hearing, the Bankruptcy Court noted that “the trustee has possession, custody and control of the property,” and opined that Swope is “protected by the automatic stay,” which precludes Phoenician from interfering with the property in any way. App. 399. And on February 7, 2014, the Bankruptcy Court ordered that Phoenician and J & S and their associates “are prohibited from entering into or upon the [Estate] Property without the express authorization of the Trustee, or further order from this Court.” Order of Court Granting First Commonwealth Bank Relief from Stay (hereinafter “Feb. 7, 2014 Order”), Bankruptcy No. 13-70512-JAD, ECF No. 113, at ¶¶ 7-8 (Bankr. W.D. Pa. Feb. 7, 2014). In its complaint, Phoenician also sued Swope under 42 U.S.C. § 1983 for wrongful eviction, claiming ■ violations of its Fourth and Fourteenth Amendment rights. Swope moved to dismiss this suit based on quasi-judicial immunity. On September 30, 2015, the Bankruptcy Court granted Swope’s motion to dismiss the complaint against her, though because the Court looked to additional briefing and other hearings, the Court evaluated the motion under a summary judgment standard. See In re J & S Props., 545 B.R. at 95. It ultimately found that “no genuine dispute of material fact exists as to whether the Trustee exercised her business judgment as to the steps she deemed necessary to protect Estate Property,” and thus Swope was entitled to immunity. Id. at 96. On July 27, 2016, the District Court affirmed the Bankruptcy Court’s order granting Swope’s motion to dismiss. The District Court found that Swope was “entitled to qualified immunity” and that she did not engage in any wrongful or ultra vires conduct since she “took appropriate action to administer and preserve the Estate Property” in accordance “with her duties as the trustee.” Phoenician Mediterranean Villa, 554 B.R. at 756-57. Phoenician filed this timely appeal. II The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(a). The District Court exercised jurisdiction under 28 U.S.C. § 158(a). We have appellate jurisdiction under 28 U.S.C. § 158(d). Like the District Court, we review the Bankruptcy Court’s legal determinations de novo and its factual findings for clear error. In re VistaCare Grp., LLG, 678 F.3d 218, 224 (3d Cir. 2012). A factual finding is clearly erroneous only if we are “left with the definite and firm conviction that a mistake has been committed.” In re W.R. Grace & Co., 729 F.3d 311, 319 n.14 (3d Cir. 2013) (citation omitted). Ill The principal issue on appeal is whether Swope is immune from Phoenician’s suit complaining of actions she took between January 16, 2014 and February 7, 2014.[3] The Bankruptcy Court held that Swope is entitled to qualified immunity because she acted within her statutory duties and the District Court agreed, finding Swope did not violate clearly established law. We reach the same conclusion based on a straightforward application of Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A The Supreme Court held in Harlow that “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Id. But if such officials take actions in their official capacity which they “knew or reasonably should have known ... would violate the [plaintiffs] constitutional rights,” they are not entitled to qualified immunity. Id. at 815, 102 S.Ct. 2727 (emphasis and citation omitted). It appears clear that Chapter 7 Bankruptcy Trustees like Swope are government officials for purposes of Harlow. Phoenician does not dispute the finding of the lower courts that Swope is a public official generally entitled to qualified immunity. In fact, Phoenician claims that because “the Chapter 7 Trustee is appointed and supervised by the United States Trustee [and] is an officer of the appointing Court, ... it is appropriate to apply Fourth Amendment limits on government power” to Swope. Phoenician Br. 22. Regardless of the Fourth Amendment analysis, Swope is a government official fox-purposes of immunity. The Chapter 7 Trustee is created by Congress, appointed by and “operating under the aegis of the U.S. Trustee,” and entrusted with the “statutory duties ... to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations,” and “perform[] [other] adjudicatory and administrative functions.” In re Castillo, 297 F.3d 940, 950-51 (9th Cir. 2002). We thus hold that bankruptcy trustees are government officials, entitled under Harlow to qualified immunity from § 1983 claims by third parties when they act in their official capacity in a manner that is not contrary to clearly established law. See 457 U.S. at 818 & n.30, 102 S.Ct. 2727. B Qualified immunity, “properly ■ applied, ... protects all but the plainly incompetent or those who knowingly violate the law.” Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (citation omitted). “To overcome qualified immunity, a plaintiff must plead facts ‘showing (1) that the official violated a statutory or constitutional right, and (2) that the right was “clearly established” at the time of the challenged conduct.’ ” Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 168-69 (3d Cir. 2016), cert. denied, — U.S. —, 137 S.Ct. 161, 196 L.Ed.2d 121 (2016) (quoting al-Kidd, 563 U.S. at 735, 131 S.Ct. 2074). And an official’s conduct violates clearly established law if “there [is] sufficient precedent at the time of action, factually similar to the plaintiffs allegations, to put defendant on notice that ... her conduct is constitutionally prohibited.” McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001). Such precedent must come either from the Supreme Court or a ‘“robust consensus of cases of persuasive authority’ in the Court of Appeals.” Mammaro, 814 F.3d at 169 (quoting Taylor v. Barkes, — U.S. —, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (per curiam)). In this case, Swope was not plainly incompetent and did not violate clearly established law. We agree with the Bankruptcy Court that there is a “dearth of case law on the topic” of whether a bankruptcy trustee may take control of a building which she is obliged to preserve and which is at imminent risk of destruction or damage, especially in the face of the lack of cooperation by a third-party tenant. In re J & S Props., 545 B.R. at 110. Rather than point to any case balancing a bankruptcy trustee’s duties to preserve the estate under her care in the face of “exigent circumstances” and her duties to a third-party tenant, id., Phoenician cites black-letter Pennsylvania law indicating that self-help eviction is generally impermissible. Because “[s]tate law defines property interests for purposes of procedural due process claims,” and Pennsylvania leaseholders are entitled to a trial before being evicted, Phoenician claims that it is clear that “self-help evictions are unlawful in Pennsylvania.” Phoenician Br. 20-21 (citing, e.g., Berman v. City of Philadelphia, 425 Pa. 13, 228 A.2d 189 (1967)). Phoenician also argues that since Swope, as trustee of the property, “stands in the shoes of the landlord debtor,” Reply Br. 6, 8 (citing Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1154 (3d Cir. 1989)), and the lease remained operative even after its rejection by the Bankruptcy Court, id. at 8 (citing 11 U.S.C. § 365(h)(l)(A)(ii)), she constructively evicted Phoenician without due process when she received the only key to the building after the locks were changed. Phoenician adds that its inability to remove its personal items from the property after the locks were changed effected an impermissible seizure. Phoenician’s thorough review of Pennsylvania law stands in stark contrast to its failure to acknowledge the many duties imposed upon Trustee Swope by federal bankruptcy law. Under 11 U.S.C. § 704, Swope had to safeguard, liquidate, and administer the estate property for the benefit of creditors. Section 704(a) states that the bankruptcy trustee “shall”: (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; (2) be accountable for all property received!;.] As the Bankruptcy Court noted, “there is no dispute” that Swope’s statutory duties “include protecting and preserving the Estate Property.” In re J & S Props., 545 B.R. at 108. And the events of January 2014 required Swope to act to preserve the estate, Phoenician’s inaction caused significant flooding to the debtor’s estate and Swope did not have a key to access the building and survey the damage. She accepted the key after the locks had been changed in order to fulfill her duty to preserve the property from further damage. Phoenician points to no case that addressed, much less established, whether such conduct by a trustee amounts to an unconstitutional eviction. In fact, the DOJ’s own guidance for bankruptcy trustees notes that for “cases where the property appears to have value for the estate, the trustee must obtain control over the property, which may include changing the locks at the premises ,,,. ” U.S. Dep’t of Justice, Executive Office for U.S. Trustees, Handbook for Chapter 7 Trustees, at § 4.C.3.Í (applying 11 U.S.C. § 704). The DOJ also notes that trustees “must immediately take all other steps which may be reasonably necessary to preserve the assets.” Id. Here, the Bankruptcy Court found, and the District Court agreed, that the imminent damage to the estate’s largest asset would reasonably lead a trustee in Swope’s position to believe that taking control of the property was not only permissible, but statutorily required. The Supreme Court has cautioned that the question of “objective legal reasonableness” with respect to clearly established precedent should not be applied at too high a level of generality. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Phoenician makes that mistake by noting that its rights to due process of law and to be free of illegal seizure are “quite clearly established.” Id. But the existence of those clearly established rights sheds no light on whether Swope’s actions would violate them in the circumstances presented here. Id. at 640, 107 S.Ct. 3034. The cases Phoenician cites do not approach the level of specificity required for clearly established law. For example, several of those cases have nothing to do with bankruptcy trustees, see Soldal v. Cook Cty., 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Ruiz v. New Garden Twp., 376 F.3d 203 (3d Cir. 2004), and the one case that does involve a trustee has nothing to do with a potential conflict between a landlord’s duties under state law and a trustee’s duty to preserve estate property under federal law. See Beard v. Braunstein, 914 F.2d 434 (3d Cir. 1990). None of the cases upon which Phoenician relies involved a trustee attempting to preserve assets of an estate under her care in the face of past and future damage to those assets. And considering Phoenician’s lack of cooperation by giving Swope a key that only opened the outer door, its refusal “to keep the property adequately heated,” and its failure to meet at the property and maintain insurance, App. 397, there is no law that clearly establishes the unlawfulness of Swope’s actions. Accordingly, we agree with the lower courts that “Swope, in accordance with her duties as the trustee, took appropriate action to administer and preserve the Estate Property.” Phoenician Mediterranean Villa, 554 B.R. at 756-57. This conclusion is fatal to Phoenician’s appeal. It strains credulity to suggest, as Phoenician does, that “every reasonable official would have understood that what” Swope did constituted an impermissible eviction that violated due process. al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074 (internal quotation marks and citation omitted). “[WJhere an official’s duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken ‘with independence and without fear of consequences.’” Harlow, 457 U.S. at 819, 102 S.Ct. 2727 (citation omitted); see also Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The circumstances of this case required Swope to act quickly to preserve the estate and she did so in a manner not contrary to law. Accordingly, she should not be subject to suit for her actions.[4] C Phoenician’s two remaining counterarguments are also unavailing. It first argues that the fact that Swope “filed her emergency motion for turnover and possession shortly after ... locking] the Phoenician out of the restaurant” (she got the key to the new locks on January 16 and filed on the same day) should be interpreted as an admission by Swope that a reasonable trustee would know she needed a court order for possession before accepting the new key. Phoenician Br. 26. This logic is faulty and would lead to undesirable outcomes. There are several other reasons Swope may have sought the Bankruptcy Court’s permission for these actions. As Swope argued, that a trustee seeks to have “her action ratified by a court, out of an abundance of caution, does not mean that she acts improperly” if she acts before the court could respond. Swope Br. 27. In this case, Swope claims she sought the emergency court order as quickly as possible, and accepted the new keys from the debtor only “because of the emergency need to preserve the estate’s largest asset” from water and other damage. Id. The Amici explain that bankruptcy trustees often seek post hoc court approval to ratify quick actions they take to preserve an estate based on exigent circumstances. If we were to interpret this practice as an admission of wrongful behavior, it would upend years of custom and impair the ability of trustees to protect estates or encourage them to refrain from seeking court supervision of their actions. We eschew such undesirable results. Phoenician also claims that Swope “gave up her qualified immunity when she testified at the hearing on Phoenician’s request for a temporary restraining order.” Phoenician Br. 28. According to Phoenician, because “Trustee Swope never raised her immunity from suit at [the] hearing” on January 24, 2014, and instead “testified at that hearing with regard to the specific facts of the lockout,” she waived her right to claim immunity later. Phoenician Br. 22. It does not appear that Phoenician raised this argument in either the Bankruptcy Court or the District Court, see Swope Br. 26 (citing docket), so it is forfeited. See United States v. Joseph, 730 F.3d 336, 341-42 (3d Cir. 2013). In any event, the claim that Swope waived her immunity is not supported by legal authority. She was not put on notice as to any clear illegality at the emergency hearing; quite to the contrary, the Bankruptcy Court rejected Phoenician’s motion for an injunction and temporary restraining order after holding that Phoenician did not establish a likelihood of success on the merits. Moreover, Swope was not required to assert her right to qualified immunity at the January 24, 2014 hearing since it was not a trial on the merits of Phoenician’s damages claims against Swope. The hearing was to adjudicate Phoenician’s motion for equitable relief and Swope’s emergency motion for control over the property. As such, there is no colorable argument of waiver here. TV For the reasons stated, we will affirm the order of the District Court affirming the order of the Bankruptcy Court. . The Bankruptcy Court noted that “the Lease Agreement [between Phoenician and J & S] provides that Phoenician was required to provide the lessor with access to the premises so that it could be inspected and/or repaired.” In re J & S Props., 545 B.R. at 108 n.8. As such, Phoenician likely violated its lease. Id. . The parties dispute whether Phoenician ever asked for and was denied access to the building between January 16 (when the locks were changed) and January 24 (when the emergency hearing was held). The Bankruptcy Court found that resolution of the immunity issue did not require a resolution of this dispute, and so assumed that Phoenician had been denied access. See In re J & S Props., 545 B.R. at 95. . It appears undisputed that the Bankruptcy Court’s Order on February 7 provided Swope with absolute quasi-judicial immunity for actions taken thereafter. That order explicitly allowed "changing all locks so that only the Bank and the Trustee have access to the Property,” Feb. 7, 2014 Order, at ¶ 3, and prohibited Phoenician from entering "without the express authorization of the Trustee,” id. at ¶ 8. Because a trustee enjoys absolute immunity from liability when she carries out a bankruptcy court’s order, see In re Harris, 590 F.3d 730, 742 (9th Cir. 2009) (finding “derived quasi-judicial immunity” applies to trustees acting "pursuant to court order” (citation omitted)); Boullion v. McClanahan, 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam) (listing cases so holding from the First, Second, Fourth, Eighth, and Tenth Circuits), and because the lower courts didn’t clearly err when they found Swope faithfully carnecí out the Bankruptcy Court’s February 7, 2014 Order, Swope is not amenable to suit for her later actions. While Phoenician doesn’t explicitly challenge Swope's immunity after February 7, it does make passing complaints about the restrictive nature of Swope’s consent to enter the property on several dates after the Order. These criticisms are ineffectual, however, because the terms of the Court’s Order gave Swope discretion over Phoenician’s ability to enter the property and the record indicates that Swope did allow Phoenician to enter the premises to remove its personal property several times. Although it was not entirely satisfied with the length of each visit or the items it was allowed to remove, Phoenician doesn’t point to evidence showing the lower courts clearly erred'in finding these decisions consistent with the Court’s Order. . Because we hold that Swope is entitled to qualified immunity, we need not address her contention that she is entitled to absolute quasi-judicial immunity for the actions she took before the Bankruptcy Court’s February 7, 2014 Order.