NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3830
_____

THOMAS F. FRIEDBERG;
SARAH BUNGE,
Appellants

v.

BAREFOOT ARCHITECT INC; BAREFOOT DESIGN GROUP LLC;
ALEXANDER MICHAEL MILNE; ALEXANDER M. MILNE;
BAREFOOT BUILDERS INC; THE MICHAEL MILNE REVOCABLE TRUST;
VILLAGE VERNACULAR INC; SENG KHAUV
_____

On Appeal from the District Court
of the Virgin Islands
District Court No. 3-15-cv-00003
District Judge: The Honorable Curtis Gòmez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 11, 2017

Before: SMITH, *Chief Judge*, McKEE, and SCIRICA, *Circuit Judges*

(Filed: January 25, 2018)

_____

OPINION[*]
_____

SMITH, *Chief Circuit Judge.*

Around 1999 to 2000, Michael Milne, an architect employed by Village Vernacular,

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Inc. and Village's vice-president and director, designed a home for Thomas Friedberg and Sarah Bunge (F&B), who owned real estate in the Virgin Islands. After Village Vernacular decided to get out of the architectural business, Milne formed his own company, Barefoot Architects, Inc. In 2004, Barefoot filed suit against F&B, another architect and that architect's firm, alleging that Barefoot's copyrighted design for the home had been infringed. F&B asserted three counterclaims against Barefoot. The litigation was contentious. We affirmed the District Court's grant of summary judgment in favor of F&B on the copyright claim, concluding that Barefoot had failed to adduce evidence that it owned the copyright. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 833 (3d Cir. 2011) (referred to factually hereafter as the BAI Litigation). We also vacated the District Court's dismissal of F&B's counterclaims and remanded for further proceedings.

In February 2011, the month after we issued our decision, Barefoot voluntarily filed a Chapter 7 bankruptcy petition. JA156, 192-194; *see In re Barefoot Architect, Inc.*, No. 3:11-bk-30002 (Bankr. D.V.I.). The Trustee filed an adversary proceeding for avoidance and recovery of fraudulent conveyances. Before the adversary proceeding was resolved, however, the bankruptcy petition was dismissed in February 2013. JA156.

Thereafter, the counterclaims in the BAI Litigation proceeded and the parties reached a settlement. By its terms, the settlement did not affect a pending motion by F&B for attorney's fees and costs on the copyright infringement claim. On July 2, 2014, the District Court granted the motion for attorney's fees and costs, entering judgment in favor of F&B and against Barefoot in the amount of $241,109.75 (the $241,000 judgment).

Six months later in January of 2015, F&B sued Barefoot, Milne, Barefoot Design

2

Group, LLC (Design), Barefoot Builders, Inc., The A. Michael Milne Revocable Trust (Trust), Village Vernacular (Village) and Seng Khauv. The complaint alleged that Barefoot had fraudulently conveyed its property to the other defendants to avoid paying the $241,000 judgment. F&B sought the imposition of a constructive trust and a determination that the other defendants were Barefoot's alter egos. *See* JA140. The defendants successfully moved to dismiss the complaint. The District Court concluded that the fraudulent conveyance claim failed to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. The dismissal was without prejudice.

The First Amended Complaint (FAC) followed. It again alleged that Barefoot had fraudulently conveyed its assets to avoid paying the $241,000 judgment, sought a constructive trust over the assets, and requested a declaratory judgment that the other defendants were alter egos of Barefoot. Defendants again moved to dismiss for failure to state a claim under Rule 12(b)(6) and for lack of particularity as required by Rule 9(b). The District Court acknowledged that the amendment asserted several counts. The Court explained, however, that the fraudulent conveyance claim was the only cause of action because the other counts—seeking a constructive trust, and a declaratory judgment as to who owned what assets and whether the other defendants were alter egos of Barefoot— were simply remedies to be pursued in the event F&B established a fraudulent conveyance. JA7. As amended, the Court determined that the FAC was still deficient because "many of the allegations [were] based on information and belief without a factual basis for said belief." JA13. The Court reasoned that these allegations failed to provide the grounds for F&B's suspicions and did not meet Rule 9(b)'s particularity requirement. Although the

3

complaint was dismissed without prejudice, the judgment directed the Clerk to mark the case closed. JA4.

This appeal followed. In their opening brief, F&B contend that they are "standing on the allegations of their First Amended Complaint" as sufficient to state a cause of action for fraudulent conveyance. Appellants' Br. at 4, 12.[1] We exercise plenary review over a dismissal under Rule 12(b)(6) and Rule 9(b). *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007); *cf. City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014) ("exercis[ing] plenary review over the dismissal of a complaint for failure to satisfy the heightened pleading standards of the PSLRA" and other securities laws).

In *Ashcroft v. Iqbal*, the Supreme Court instructed that to survive a 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining facial plausibility, we may consider matters of public record attached to the defendants' motion to dismiss such as the bankruptcy petition, and other documents from the Virgin

---

[1] The District Court exercised diversity jurisdiction under 28 U.S.C. § 1332 and 48 U.S.C. § 1612(a). Although the District Court's dismissal was without prejudice, we conclude that we have final order jurisdiction under 28 U.S.C. § 1291. F&B's assertion that they are standing on their complaint, Appellants' Br. at 4, 12, together with the District Court's directive to close the case, result in this case fitting within the exception to *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976). *See Garber v. Lego*, 11 F.3d 1197, 1198 n.1 (3d Cir. 1993).

Islands' Recorder of Deeds' Office.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

In addition, because F&B assert a fraudulent conveyance claim, they "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.  The rigor with which Rule 9(b) is applied has been relaxed in some instances "where the factual information is peculiarly within the defendant's knowledge or control."  *In re Burlington Coat Factory Secur. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).  But the relaxed application requires that a "complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity."  *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992).  At all events, "conclusory allegations will not suffice."  *Burlington Coat Factory*, 114 F.3d at 1418; *see Iqbal*, 556 U.S. at 678 (instructing that the acceptance of allegations in a complaint as true is not applicable to legal conclusions).

The elements of a fraudulent conveyance claim are: "(1) an actual conveyance of property or assets by the debtor which (2) is made while a suit is pending or in anticipation of a lawsuit, (3) renders the transferor insolvent or greatly reduces its estate, and (4) is made for less than fair consideration." *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 462 (D.V.I. 1997).

A review of the FAC reveals that F&B satisfied the second element.  The alleged transfers occurred during the pendency of the BAI Litigation.  As to whether the other

5

elements have been met, we will address the sufficiency of the allegations with regard to each defendant.

The allegations against Seng Khauv fail to state a claim of fraudulent conveyance. The averment that Barefoot transferred a 2007 Jeep Liberty without Khauv's payment of consideration is contradicted by the Chapter 7 Bankruptcy Petition attached to the motion to dismiss. That petition, which was made under penalty of perjury, sets out that the transfer was made in exchange for $9,459.70 "value received." **JA144, 210.** Similarly, the allegation that Barefoot Builders (BBI) received a 2005 KIA truck from Barefoot even though it paid nothing is at odds with the bankruptcy petition, which states that Barefoot received $8,095.00 from BBI. **JA153, 210.** Given the nature of the bankruptcy proceeding, which involved the appointment of a Trustee, no reasonable inference can be drawn that Khauv and BBI are liable for the misconduct alleged.

The allegations of the FAC also are inadequate to state a plausible claim of fraudulent conveyance against Village. As recited above, the first element of the claim requires a conveyance *by the debtor*. The FAC avers that it was Village, not Barefoot, that conveyed intellectual property. Thus, there is no reason to set aside the District Court's dismissal of the FAC as to Village.

The A. Michael Milne Revocable Trust also allegedly received a fraudulent conveyance of $1.3 million in income from Barefoot. The FAC alleges that the Trust was "established in or about June 2009," during the BAI Litigation. Thereafter, Barefoot stated in its Chapter 7 Petition filed in February 2011 "that it earned $1,300,000" in income between 2008 and 2010. During the creditors' meeting, F&B alleged, that Milne "was

6

unable to account for the $1,300,000 income." JA153, ¶ 8(a). The FAC further alleged that in June 2009, Milne transferred his personal residence to the Trust for $10 and the Trust secured an "$800,000 loan against the property." F&B aver that the "Trust was able to secure a [sic] $800,000 loan against the property . . . as a result of Milne's transfer of assets, including a portion of the $1,300,000 in Barefoot income . . . to the Trust." JA153-54.

We conclude that these allegations do not support a fraudulent conveyance claim against the Trust. First, the only actual conveyance referenced is of Milne's personal residence in Estate of Fish Bay to the Trust and Milne is not the judgment debtor. Otherwise, there is simply speculation that the $1.3 million in income was transferred from Barefoot to the Trust. *Twombly* instructs that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

Second, the reasonable inference that F&B would have us draw from its allegations is that Barefoot transferred the $1.3 million in income to the Trust to facilitate the loan transaction. Yet the loan transaction occurred in June of 2009, making it impossible for part of the 2009 income and all of the 2010 income of $278,249, which was set forth in the bankruptcy petition, *see* JA208, to be conveyed for the purpose of facilitating the transaction. Furthermore, the $1.3 million, according to the Chapter 7 petition, is "gross income," which does not account for Barefoot's business expenses or the remuneration due its employees, which the FAC avers totaled three persons. Given the timing of the loan and the type of income, the amount purportedly transferred to foster the loan transaction could not have been the $1.3 million in gross income set forth in the bankruptcy petition.

7

Whatever the alleged transfer amount, it is unreasonable to infer that the transfer was needed to facilitate what appears to be a real estate transaction in which the Trust's real property on the Estate of Fish Bay in the Virgin Islands, valued for purposes of the deed at $725,808, JA221, was encumbered by a mortgage for $800,000. JA241. We conclude that the District Court did not err in granting the 12(b)(6) and 9(b) dismissal of the Trust.

As to Design's liability for fraudulent conveyance, the allegations assert that based on information and belief around the time of the filing of the Chapter 7 Petition, "Barefoot transferred all of the 200 to 300 projects, including the clients, as well as funds paid to Barefoot, receivables owned by Barefoot, licenses or copyrights owned by Barefoot to Design" and "Design did not pay any consideration." JA151. Further, F&B alleged that the transfer was effected by Barefoot's closing its shop on the day it filed for bankruptcy and Design "open[ing] the doors . . . the very next day" at the same location. **JA151, ¶ 6(d).** These allegations simply speculate what Barefoot did with its assets the day after it filed for Chapter 7 relief. Moreover, the initiation of the bankruptcy proceeding weighs against any reasonable inference being drawn that this fraudulent conveyance of all of Barefoot's assets occurred as alleged given the averments that a trustee was appointed and an adversary proceeding was initiated. *See* JA156. As we noted in *In re J & S Properties, LLC*, 872 F.3d 138, 143 (3d Cir. 2017), a "Chapter 7 Trustee is created by Congress, appointed by and 'operating under the aegis of the U.S. Trustee,' and entrusted with the 'statutory duties . . . to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations' and 'perform[ ] [other] adjudicatory and administrative functions.'" *Id.* (quoting *In re Castillo*, 297 F.3d 940, 950-

8

51 (9th Cir. 2002)). For these reasons, we will affirm the District Court's dismissal of Design as a defendant.

Finally, we turn to whether there are sufficient allegations against Barefoot and Milne, Barefoot's president, to state a claim for fraudulent conveyance. F&B allege on information and belief that "Barefoot had between 200 to 300 open projects that it was providing architectural and design services for and had an architectural firm employing three persons" located in St. John, Virgin Islands. JA148. F&B then set out the history of the BAI Litigation and alleged that during that litigation "Barefoot, through Milne, began conveying Barefoot's property and assets for less than fair consideration to the other named Defendants in this lawsuit, which greatly reduced the assets of Barefoot to the point of insolvency all for the purpose of placing the assets of Barefoot beyond the reach of its creditors." JA149. Beginning in 1999 through 2010, even before the BAI litigation commenced, "Barefoot, through its 100% shareholder, Milne, . . . was using Barefoot as an alter ego of Milne and of the other Defendants." *Id.* Because "Milne and Barefoot were alter egos of each other," Milne used Barefoot to enter into legal transactions and to pay between 2000 to 2010 Milne's "personal obligations and expenses." JA150. "Between 2000 and 2010, Milne acting as Barefoot, failed to follow the requisite corporate formalities by failing to hold regular corporate meetings, maintain corporate records and minutes, including resolutions to authorize Corporate acts." *Id.* Milne also had Barefoot pay for his insurance, licensing, and taxes on his personal vehicles, as well as real estate and other taxes Milne owed. F&B further allege that "Barefoot did not have assets to pay its ongoing expenses" and "Milne was personally paying the legal expenses and costs of Barefoot in

9

purs[u]ing the failed copyright lawsuit against" them. *Id.* F&B also believe that "Milne personally paid the legal obligations of Barefoot in settling the counterclaims" in the BAI Litigation and the "judgment for attorneys' fees and costs . . . incurred before the Third Circuit." JA 150-51.

These allegations support a reasonable inference that Barefoot may be insolvent and that the insolvency occurred during the pendency of the BAI Litigation. The averments, however, fail to set out with particularity the first and fourth elements of a fraudulent conveyance claim, namely, what property was actually conveyed for less than fair consideration. Because Barefoot was a going concern and employed three persons, one of which was Milne, the reasonable inference is that the business had to pay its expenses and provide some type of remuneration to its employees. Viewed in this light, the averments of the FAC do not, without more, support a reasonable inference that Barefoot transferred the balance left after payment of its business expenses for less than fair value. Because F&B hold a judgment for $241,000 against Barefoot, F&B had the ability to execute on Barefoot's assets and to conduct discovery in aid of execution. For that reason, the information needed to establish these elements of F&B's fraudulent conveyance claim was not solely within the control of Barefoot and Milne. As a consequence, the relaxed application of Rule 9(b) is not enough to replace the speculation as to what property was conveyed and that the conveyance was for less than adequate consideration.

To some, this result may be disconcerting. But F&B are not without recourse. They have a judgment for $241,000 in their favor against Barefoot, and the Federal Rules of Civil Procedure provide avenues to execute on that judgment.

10

We recognize F&B's argument in the alternative that they should have been afforded the opportunity to amend their FAC. We do not disagree. *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Nonetheless, on appeal, F&B specifically chose to "stand on the allegations of their First Amended Complaint." Appellant's Br. at 4, 12. Based on that decision, we have concluded that jurisdiction exists to review the dismissal of the FAC under 12(b)(6) and 9(b). We will not ignore F&B's choice now and grant relief that would be inconsistent with our conclusion that final order jurisdiction existed.

For the above reasons, we will affirm the judgment of the District Court.